107 N.J. Super. 467 (1969)
259 A.2d 231
BERNICE H. BZOZOWSKI, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF JULIUS J. BZOZOWSKI, DECEASED, PLAINTIFF,
v.
PENNSYLVANIA-READING SEASHORE LINES, A CORPORATION OF THE STATE OF NEW JERSEY AND LEO J. WNUK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Argued October 3, 1969.
Decided November 20, 1969.
*468 Mr. N. Douglas Russell, attorney for plaintiff.
Mr. Arthur J. Sills, Attorney General (Mr. William Gunal, Deputy Attorney General, appearing), attorneys for the Board of Public Utility Commissioners.
*469 GALLNER, P.J.J.D.R.C. (temporarily assigned).
Plaintiff served a subpoena duces tecum upon the Board of Public Utility Commissioners (hereinafter Board) in which she requested access to certain records in the Board's possession. The documents sought to be inspected pertain to an investigation by the Board of a grade crossing of the Pennsylvania-Reading Seashore Line located in Vineland, New Jersey, as a result of a fatality which occurred on or about August 8, 1967. Thereafter, the Attorney General, on behalf of the Public Utility Commission, moved to quash the subpoena.
Plaintiff has followed the improper statutory procedure to invoke the court's aid in inspecting the documents sought here. Having been denied the right of inspection, her remedy should have been by way of a proceeding in lieu of prerogative writs for an order requiring the custodian of the records to produce. N.J.S.A. 47:1A-4. However, since the subpoena does not seek the production of the records in court nor any Board official to testify, it will be treated as though this action were brought on by a proceeding under N.J.S.A. 47:1A-4 and will be decided on the merits. The briefs and arguments raise a substantial question of law and the following of the prescribed procedure would not change the posture of the case at this point, nor would it alter the substantial questions involved. The action will be treated as if properly brought.
The chief question to be decided is whether the various investigations by the Board sought to be "discovered" are immune from such scrutiny. This query of necessity brings the court face to face with N.J.S.A. 47:1A-1 et seq., and Board regulation 14:406-4 (4). N.J.S.A. 47:1A-1 provides:
The Legislature finds and declares it to be the public policy of this State that public records shall be readily accessible for examination by the citizens of this State, with certain exceptions, for the protection of the public interest.
*470 This policy is modified by the exceptions contained in N.J.S.A. 47:1A-2. The Board claims that its regulation was passed by virtue of the authority vested in it by N.J.S.A. 47:1A-2. Plaintiff seeks to escape the thrust of this regulation in seeking discovery of the reports requested in the subpoena duces tecum.
The common law right of an interested citizen to inspect public records, Ferry v. Williams, 41 N.J.L. 332 (Sup. Ct. 1889), has been incorporated into the "Right to Know Law," N.J.S.A. 47:1A-1, quoted above.
In implementing this policy so declared, the Legislature provided in N.J.S.A. 47:1A-2 that records are discoverable, "Except as otherwise provided in this act or by any other statute, * * * executive order of the Governor, rule of court, any Federal Law, regulation or order, or by any regulation promulgated under the authority of any statute on executive order of the Governor * * *.
Pursuant to the authority vested in him by N.J.S.A. 47:1A-2, the Governor, in three executive orders, Nos. 7, 8, 9, empowered the chief executive officer of each executive department of the State Government to adopt regulations specifying which records would be subject to public inspection. Acting under this delegated power, the Board promulgated regulation 14:406-4, subparagraph 4, which reads:
All records which are required to be made, maintained or kept by and for the Board which relate to accidents and investigation of accidents concerning public utilities and to safety inspections * * * shall not be deemed public records, copies of which may be purchased or reproduced under the provision of Chapter 73, P.L. 1963.
We must assume, without more concrete authority to the contrary, that the executive orders referred to were issued to carry out the general purpose of the "Right to Know Law" on the one hand and to protect and immunize certain critical governmental functions from public prying and scrutiny on the other. See N.J.S.A. 47:1A-3. The United States Supreme Court, in Jencks v. United States, *471 353 U.S. 657, 77 S.Ct. 1007, 1014, 1 L.Ed.2d 1103 (1957), expressed that concept in this language;
It is unquestionably true that the protection of vital national interests may militate against public disclosure of documents in the Government's possession. This has been recognized in decisions of this Court in civil causes where the Court has considered the statutory authority conferred upon the departments of government to adopt regulations "not inconsistent with law, for * * * use * * * of the records, papers * * * appertaining" to his department.
In addition, the executive orders must be read in pari materia with the statute under which the Board is given rule-making power. It is noteworthy that our Legislature, long before the "Right to Know Law," contemplated the enactment of rules by a governmental agency necessary only for the protection of the public and not arbitrary or generally prohibitive, for in N.J.S.A. 48:2-12, it provided that "the Board may make all needful rules for its government and other proceedings." (Emphasis supplied). This court reads "needful" as meaning necessary to accomplish a public protective purpose only.
First, it must be borne in mind that the Governor's executive orders and any protective regulation promulgated thereunder must bear a relationship to public policy, the need to protect the record and the balance between such need and the interests of justice and litigants. Our courts have not been reluctant to strike down regulations deemed to be inimical to the provisions of N.J.S.A. 47:1A-1.
In Accident Index Bureau v. Hughes, 46 N.J. 160 (1965), the Supreme Court held a regulation of the Workmens Compensation Division denying inspection of records as being arbitary and discriminatory. The regulation there involved had a built-in motive to prevent a profit-making organization from prying into the records but, as the court held, legitimate persons were also thereby deprived.
In the present case there seems to be no legitimate purpose for regulation 14:406-4(4). It is broad in its scope; it does not serve a public interest geared to secrecy, but it *472 does violate the intent of the "Right to Know Law." It is self-serving. An examination of the Public Utility Act discloses that the regulation is repugnant to the statute regulating the Board. N.J.S.A. 48:2-9 states:
The board shall furnish its secretary or in his absence an assistant secretary such of its findings and decisions as, in its judgment, may be of general public interest. The secretary or in his absence an assistant secretary shall compile the same for the purpose of publication in a series of volumes to be designated "Reports of the Board of Public Utility Commissioners of the State of New Jersey," which shall be published in such form and manner as may be best adapted for public information and use. Such publications shall be competent evidence of the reports and decisions of the commission therein contained without any further proof or authentication thereof. The contents of the reports shall not be under the supervision or control of the official State editor.
It should be noted in this statutory mandate that the "reports" and "decisions" are to be published for public consumption. However, in this case plaintiff merely seeks an examination of the "reports" contained in the investigators' records here in question.
The Board is endowed with certain powers as a governmental agency. Its general jurisdiction is outlined in N.J.S.A. 48:2-13 and 16. To give a governmental agency complete supervision over utilities which are tightly coupled with a public interest on the one hand, and to permit its inspections of grade crossings to be immune from public knowledge on the other, is an illogical process of the very principles of government and obviously repugnant to the very interest of the "Right to Know Law." The only defense the regulation here under consideration could enjoy would be its need to protect the general public.
State v. Mayo, 4 Conn. Cir. 511, 236 A.2d 342 (Cir. Ct. 1967) indicates that Connecticut has a "right to know" statute not dissimilar from our own gen. stat. § 1-19. That law contains a built-in prohibition to inspect and is expressed in the following language:
*473 "Section 1-20 of the General Statute authorizes the refusal of permission to inspect or copy such records if such inspection would affect the public security or the financial interests of the state or any of its political subdivisions * * *."
This protective cloak is not unlike the exceptions written into the law of our own State or the executive orders thereunder. This court, like the court in Mayo, does not construe such permissive protective legislation as granting a public body a carte blanche right to enact arbitrary rules of prohibition without showing that such a protection of the records being shielded from scrutiny are vital to public security. One of the issues in Mayo was whether defendant's denial of plaintiff's request to inspect was for just and proper cause. This court, in deciding the issue before it, applies the same qualifying test.
It is urged by the Attorney General that to permit inspection of reports by utilities would encourage their filing less candid reports. The court will not explore this thesis since the reports sought here are those of the Board growing out of inspections, and not reports by utilities to the Board. N.J.S.A. 48:2-9 does not contemplate reports from utilities. It refers to "Reports of the Board of Public Utility Commission of the State of New Jersey." (Emphasis supplied). See also the method of use of "all official documents," as prescribed in N.J.S.A. 48:2-10.
Parenthetically, it is the opinion of this court that this Board regulation does not immunize the inspection of the specific records which plaintiff seeks. Rather, the limited effect of the regulation is to prohibit copies of the records from being either purchased or reproduced.
Generally, inspection orders should issue upon proof that the desired inspection of documents will aid a plaintiff in the preparation of his case, or otherwise facilitate proof or progress at trial, or that a denial would prejudice plaintiff. Lakewood Trust Co. v. Fidelity and Deposit Co., 81 N.J. Super. 329 (Law Div. 1963). Further, in Guarriello v. Benson, 90 N.J. Super. 233 (Law Div. 1966), the *474 court stated that inspection of public records will only be prevented where, on balance, more harm than good will result to the public interest.
In the present case it is difficult to perceive what harm would result to the Board if plaintiff is permitted to inspect its documents, nor are the Board members being requested to testify in any civil litigation, contrary to N.J.S.A. 48:2-38, or to engage in any other proceedings which would detract from their normal business activities, as Attorney General argues in his brief. In contrast, plaintiff is involved in civil litigation concerning the manner in which an individual met his untimely demise at a railroad grade crossing. The purpose of the litigation is to seek justice for all the parties involved. In order to accomplish this end the court should facilitate the discovery of relevant documents, absent a showing of substantial harm to the public's interest in having the documents inspected. Plaintiff does not suggest that the reports would be evidential. However, discovery for the purpose of obtaining facts calculated to lead to the discovery of admissible evidence is proper. Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496 (1933); Lakewood Trust Co. v. Fidelity and Deposit Co., supra.
It is plaintiff's necessity to exercise the now well-recognized right of discovery that overrides the Attorney General's arguments that the Board's records of inspection enjoy an immunity under the quoted Board regulation.
In the Lakewood Trust Co. case the Attorney General sought to invoke the protective cloak furnished by N.J.S.A. 17:9A-264 (immunity of investigations by the Department of Banking and Insurance). The court in weighing the privilege against the plaintiff's needs, said:
The application of N.J.S.A. 17:9A-264 presents a novel question in this State. No provision is made in the statute for breaching this confidentiality. However, the reports, even though confidential, may be inspected if the party seeking to inspect satisfies the court that the *475 reports are material and relevant to the action and the ends of justice and public advantage are served by the inspection. The statute thus follows substantial precedent from other jurisdictions having similar statutes which have required the production of banking department reports when necessary to serve the ends of justice.
The Attorney General in the case at bar argues that the same principle does not apply to the Board regulation under consideration because N.J.S.A. 17:9A-264 contains a method by which the information sought can be obtained via court order for good cause shown, whereas the Board's regulation does not contain such an enabling clause.
The Court cannot subscribe to this argument. The drafting of regulations so strict and unmalleable as to rob even the court of discretionary powers does not deserve the court's protection, unless the ends sought to be met by such regulation are so valid in purpose that even a court cannot tamper with them.
If the delicate area of banking and insurance can be invaded by discovery, as was held in Lakewood Trust Co., the court fails to find any compelling reason not to invade the records of the Board and must create openings in the impregnable wall so arbitrarily built up around itself by the Board.
The Attorney General fears the possibility of a breakdown in candid reporting by utilities. As we said before, such reports are not before us, but assuming arguendo that they were, the court invokes the language of Lakewood Trust Co:
The purpose behind N.J.S.A. 17:9A-264 and statutes in other jurisdictions like it is to promote the efficient administration of the banking laws by encouraging complete and accurate investigations. This policy has been readily acknowledged in other jurisdictions. However, it was made subject to the rights of litigants in full and complete disclosure of pertinent facts in litigation.
The essence of this opinion is also found in that case where the court said:
*476 The Attorney General argues that in the event the court opens the reports for inspection by the movants, the efficiency of the Department would be impaired. A potential decrease, if any, in efficiency of the Department has not been in other jurisdictions a basis for withholding material matter from litigation and should not be in this State. The public interest is best served by promoting fair and open trials free of surprise so as not to simulate a sporting event. Full disclosure of relevant matter is essential to accomplish this purpose. Further, where as here the reports sought to be withheld from litigants form a part of the complaint upon which the action is based, it is the opinion of this court that the interests of substantial justice require that the contents of those reports be made known to the party against whom they are being used. The fact that the reports may not be admissible in evidence at trial does not alter this conclusion.
It is apparent from the pleadings that, among other things, the construction and maintenance of the railroad grade crossing which was subject to the Board's inquiry, is a basis for plaintiff's allegations in her complaint. Full discovery and disclosure of these conditions are necessary to the preparation of her case and must perforce serve the ends of justice. If inspection of the grade crossing were a police matter, that would be the agency where plaintiff would need to seek her information. Her only source is the Board, an agency created for the purpose of serving the public in the area of public utilities.
It may well be that the right asserted here is of a qualified nature, but that should assist rather than foreclose plaintiff's right to inspect.
This court need not rule on the total legality or illegality of the Board's regulation. It is sufficient if the particular documents sought to be inspected are of such a character that this court is impelled to grant the relief sought on the ground that plaintiff here falls within a class of the public to whom the right to examine the Board records should not be denied. And so this court will follow the approach as found in 45 Am. Jur. Records and Recording Laws, § 17, at 427;
Every person is entitled to the inspection, either personally or by his agent, of public records, including legislative, executive and judicial records, provided he has an interest therein which is such as would *477 enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information. This rule, it is said, is not so much a denial of the right of every citizen to inspect the public records and documents as a declaration of the interest which a private individual must have to avail himself of the extraordinary writ of mandamus to enforce his right. In theory the right is absolute, yet in practice it is so limited by the remedy necessary for its enforcement that it can be denominated only a "qualified right." The existence of a suit is not, however, a sine qua non for the exercise of the right.
In this country, the person asking inspection must have an interest in the record or paper of which inspection is sought and the inspection must be for a legitimate purpose, but interest as a citizen and taxpayer is sufficient in some instances. An attorney at law employed by a person having the right to an inspection has an interest which entitled him to an inspection.
The Board is a governmental agency; it is created to serve a specific service for the people in the area of regulating public utilities. The various administrative agencies charged with certain regulating powers are creatures of the Legislature and as such are governed by statute except where enabling Legislation gives an agency rule-making powers. This rule-making power has now been interpreted in the Administrative Procedure Act, L. 1968, C. 410, which became effective January 14, 1969. N.J.S.A. 52:14B-3 of that act provides.
3. In addition to other rule-making requirements imposed by law, each agency shall:
(1) adopt as a rule a description of its organization, stating the general course and method of its operations and the methods whereby the public may obtain information or make submissions or requests.
It is apparent from this statutory enactment that a total and invulnerable prohibition against inspection, as prescribed in regulation 14:406-4(4), supra, was never contemplated by the Legislature. It is the opinion of this court that the regulation is oppressive, for it does not even contain sufficient elasticity to apply to a competent court for the right to inspect, as provided for by N.J.S.A. 17:9A-264, *478 which the Attorney General cites in his brief as distinguishing that statute from the regulation under discussion. The omission of a method for gaining access to the records of the Board does not protect it; on the contrary, its very arbitrary language condemns it.
The court is cognizant of the fact that certain areas of government are sensitive and, for the good of all, must be guarded from public scrutiny. But in this case, without a showing by the Attorney General what harm could befall the Board from the inspection sought by plaintiff, this court must consider that the various inspections made by the Board of the railroad crossing in question comprise information in the hands of a public servant to which the right of inspection attaches and falls squarely under N.J.S.A. 47:1A-1 et seq. and is not protected by the regulation of the Board. This policy was aptly expressed in the case of Moore v. Mercer County Board of Chosen Freeholders, 76 N.J. Super. 396 (App. Div. 1962), modified in 39 N.J. 26 (1962). The court there said;
Citizens of a self-governing society must have the legal right to examine and investigate the conduct of its affairs, subject only to those limitations imposed by the most urgent public necessity. To that end they must have the right to simple, speedy enforcement procedure geared to cope with the dynamic expansion of government activity.
These rights must be elevated to a position of the highest sanction if the people are to enter into full enjoyment of their right to know. Freedom of information is the very foundation for all those freedoms that the First Amendment of our Constitution was intended to guarantee.
To this end it is determined that plaintiff is entitled to examine the records of the Board at a time and place convenient to the Board personnel. Upon submission of a proper Order such inspection will be directed.