115 N.J. Super. 338 (1971)
279 A.2d 866
IRVAL REALTY, INC., ET AL., PLAINTIFFS-RESPONDENTS,
v.
BOARD OF PUBLIC UTILITY COMMISSIONERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1971.
Decided June 28, 1971.
*339 Before Judges SULLIVAN, COLLESTER and LABRECQUE.
Mr. Richard M. Pisacane, Deputy Attorney General, argued the cause for appellant (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
Mr. Jay H. Greenblatt argued the cause for respondents (Messrs. Greenblatt & Greenblatt, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by defendant Board of Public Utility Commissioners (Board) from a summary judgment entered in the Superior Court in favor of plaintiffs, ordering defendant to produce and permit inspection and copying of accident reports made by the Board and those filed with the Board by the South Jersey Gas Company *340 relating to explosions that occurred on plaintiffs' properties which were serviced by the public utility.
The facts are not in dispute. On May 5, 1969 an explosion occurred on premises in Turnersville owned by Irval Realty, Inc., resulting in extensive damage to the Watson Turkey Farm, which was located on the property and operated by Eastern Turkey, Inc. On July 30, 1969 an unrelated explosion occurred in Newfield. This explosion completely destroyed a house and seriously injured Eleanor Papalardo, who died several days later. Investigations were made by the Board and the gas company, and reports thereof were filed with the Board pursuant to N.J.S.A. 48:2-36.1 and the Board's administrative order No. 14:260.
Plaintiffs instituted actions against the South Jersey Gas Company for property damages caused by the explosions and for the wrongful death of Eleanor Papalardo. In preparing their cases for trial plaintiffs learned that following the Irval Realty explosion the gas company had removed some piping, and that while the firemen were still fighting the fire which followed the Papalardo explosion the company removed a gas meter, regulator and piping. One piece of such piping was allegedly misplaced. They also learned that reports based on testings conducted by the gas company had been submitted to the Board.
Plaintiffs requested permission of the Board to inspect and copy the reports filed by the company and reports made by the Board's investigators. Defendant notified plaintiffs that such reports were privileged information under its administrative order No. 14:260 and refused the request. Plaintiffs thereupon brought an action in lieu of prerogative writs pursuant to N.J.S.A. 47:1A-4 for an order to inspect and copy the records. Defendant filed an answer alleging that the information did not come within the classification of public records which were discoverable under N.J.S.A. 47:1A-1 et seq. and was privileged under its regulation No. 14:406-4(4). Plaintiffs' motion for summary judgment was granted and defendant appealed.
*341 N.J.S.A. 48:2-36.1 authorizes the Board to require a public utility to submit accident reports. Pursuant to that statute the Board promulgated administrative order No. 14:260 requiring a public utility to submit reports of "reportable accidents," which include accidents that result in the death of a person or damage to the property of others amounting to more than $1,000. Defendant does not deny that the accidents involved in this case are "reportable accidents" under its administrative order or that reports have been filed by both the gas company and the Board's investigators.
In the "Right to Know Law," L. 1963, c. 73 (N.J.S.A. 47:1A-1 et seq.), effective July 1, 1963, the Legislature declared it to be the public policy of this State that "public records shall be readily accessible for examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-2 provides in pertinent part:
Except as otherwise provided in this act or by any * * * executive order of the Governor * * * or by any regulation promulgated under the authority of any statute or executive order of the Governor, all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission * * * or by any public board, body, commission, or authority created pursuant to law by the State * * * shall, for the purposes of this act, be deemed to be public records.
Pursuant to this authority, the Governor in 1963 issued executive order No. 9 which authorized and empowered the head or principal executive of each principal department of the State Government to adopt regulations setting forth which records under his jurisdiction shall not be deemed to be public records subject to inspection and available for copying. Acting under this authority the Board promulgated regulation No. 14:406-4 "(Public Records)", subsection 4 of which provides:
All records which are required to be made, maintained or kept by and for the Board which relate to accidents and investigation of *342 accidents concerning public utilities and to safety inspections and surveys of property and equipment of public utilities shall not be deemed public records, copies of which may be purchased or reproduced under the provisions of Chapter 73, P.L. 1963.
Defendant's first point, which was not raised below, is that the accident reports here involved are not governed by the "Right to Know Law." It contends that the public records referred to in the statute that may be inspected and copied are limited to records which "are required by law to be made, maintained and kept on file" and that this phrase means "required by statute"; that since the filing of accident reports is not required by statute but by a Board regulation (administrative order No. 14:260) plaintiffs have no right to inspect and copy the reports.
We think the Board takes too narrow and restrictive a view in its interpretation of the phrase "required by law." As noted above, N.J.S.A. 48:2-36.1 authorizes the Board to order a public utility to submit any data relevant to any inquiry or investigation pending before the Board. Pursuant to that authority the Board adopted a regulation (administrative order No. 14-260) which requires a utility to file reports of specified accidents. Orders of the Board may be enforced by recourse to the courts, N.J.S.A. 48:2-41, and by the imposition of penalties, N.J.S.A. 48:2-42. Rules and Regulations adopted by administrative agencies pursuant to the power delegated to them by the Legislature have the force and effect of law. Cammarata v. Essex County Park Comm'n., 46 N.J. Super. 262, 269 (App. Div. 1957), aff'd 26 N.J. 404 (1958). We conclude that the accident reports filed by the public utility in this case fall within the category of public records as defined in the "Right to Know Law."
Defendant claims that if the accident reports made by its investigators or filed with it by the public utility are public records they are exempt from disclosure under the express exceptions contained in N.J.S.A. 47:1A-2, namely, exceptions provided by "executive order of the Governor * * * or *343 by any regulation promulgated under the authority of any statute or executive order of the Governor." It declares that regulation No. 14:406-4(4) barring the inspection and copying of such reports is a reasonable regulation and that disclosure of the reports would be inimical to the public interest. It further contends that the preservation of the integrity and efficiency of the Board requires that accident reports be privileged from disclosure.
Defendant asserts that administrative order No. 14:260 requiring a public utility to submit accident reports is to help the Board determine what safety practices should be recommended; that its purpose is to consider remedial procedures and not a determination of negligence or other fault on the part of the utility. The Board alleges that utility companies, recognizing that accidents are harmful to the company as well as to the public, have advanced theories, guesses, assumptions and suggestions in their reports which assist in determining what remedial measures should be taken to avoid similar accidents. It claims that if such reports are made available to persons who intend to sue the utility, the reports will be less than candid and greatly reduce their value.
Defendant also alleges that the rationale underlying N.J.S.A. 48:2-38, which exempts its members and employees from testifying or furnishing documents in civil suits, is evidence of legislative recognition of the necessity of keeping its operations free from impairment. It argues that based on this legislative concept courts should not unduly interfere with its operations by requiring disclosure of accident reports.
Preliminarily, it should be noted that plaintiffs do not claim that the reports they wish to inspect would be evidential in their pending civil litigation; they seek only to discover facts set forth therein which may lead to admissible evidence. Cf. Phillips v. Erie Lackawanna R.R. Co., 107 N.J. Super. 590 (App. Div. 1969), certif. den. 55 N.J. 444 (1970).
*344 At common law a citizen was entitled to inspect public records provided he showed a requisite interest therein. In Ferry v. Williams, 41 N.J.L. 332, 336 (Sup. Ct. 1879), the court held it was sufficient if the person seeking inspection had such interest in a specific controversy as would enable him to maintain or defend an action for which the public documents would furnish competent evidence or necessary information. See also Accident Index Bureau, Inc. v. Hughes, 83 N.J. Super. 293, 298-299 (App. Div. 1964), aff'd 46 N.J. 160 (1965); Moore v. Bd. of Freeholders, Mercer County, 76 N.J. Super. 396, 405-407 (App. Div. 1962), mod., 39 N.J. 26 (1962); Taxpayers Ass'n of Cape May v. City of Cape May, 2 N.J. Super. 27 (App. Div. 1949).
Governor Hughes recognized that this right of inspection remained, although supplemented by N.J.S.A. 47:1A-1 et seq., when he issued executive order No. 9 which states:
Chapter 73 represents a right supplemental to the existing right of the public to examine and copy public records, which right has been established under the common law and by statute and remains inviolate even without the benefit of the provisions of said Chapter 73.
It is also clear that the right of the Governor, by executive order, and the Board, by regulation, to exclude public records from disclosure is implicitly qualified by N.J.S.A. 47:1A-1, which indicates that such exclusions can be made only when necessary for the protection of the public interest.
In Bzozowski v. Penn-Reading Seashore Lines, 107 N.J. Super. 467 (Law Div. 1969), the court held that plaintiff, who was involved in civil litigation concerning the manner in which an individual met his death at a railroad grade crossing, was entitled under N.J.S.A. 47:1A-1 et seq. to inspect records of an investigation of the fatality conducted by the Board. The court ruled that the Governor's executive orders must be read in pari materia with the statute under which the Board was given rule-making power, and that they were issued to carry out the general purpose of the "Right to *345 Know Law" on the one hand and to protect and immunize certain records on the other, such as records of investigations in progress (N.J.S.A. 47:1A-3), where the inspection, copying or publication would be inimical to the public interest. The court said that the executive orders and regulations promulgated thereunder must bear a relationship to public policy  the need to protect a record from disclosure and the balance between such need and the interests of justice and litigants. The court concluded that the total prohibition against inspection prescribed by regulation No. 14:406-4(4) was never contemplated by the Legislature, and that absent a showing of substantial harm to the public's interest the inspection should be allowed. We are in accord with the rationale of Bzozowski.
Defendant's argument, that if inspection of utility company accident reports were permitted the reports would be less than candid, is not persuasive. A similar argument was raised in Bzozowski at 473, 475, and in an analogous case, Lakewood Trust Co. of Lakewood v. Fidelity and Deposit Co., 81 N.J. Super. 329, 335-336 (Law Div. 1963), in which inspections were permitted.
We fail to see how the protection of the public would be adversely affected if plaintiffs were permitted to inspect the utility company's reports in this case. The Board makes its own investigation of such accidents and it does not imply that utility company reports would be falsified if an inspection was permitted. The fact that a utility company might not include in its reports speculative theories concerning such accidents is clearly outweighed by plaintiffs' right to be accorded substantial justice in the litigation of their claims.
Moreover, we perceive no logical reason why reports made by the Board's investigators should not be inspected by citizens with a requisite interest therein, when an investigation has been completed. The statute creating the Board of Public Utility Commissioners, L. 1911, c. 195 (N.J.S.A. 48:2-1 et seq.), was intended to safeguard the interests of both public utilities and members of the public. O'Connor v. *346 Board of Public Utility Comm'rs, 128 N.J.L. 35, 40 (Sup. Ct. 1942), rev'd on other grounds, 129 N.J.L. 263 (E. & A. 1942). Here the Board has made no showing that the inspection of its records and those filed by the gas company would be inimical to the public interest. It is undisputed that plaintiffs have a legitimate interest in such inspection because the records may furnish information calculated to lead to the discovery of admissible evidence in their litigation with the gas company. Pretrial discovery for such purposes is permitted. R. 4:10-2. See Huie v. Newcomb Hospital, 112 N.J. Super. 429, 432 (App. Div. 1970).
We hold the view that the policy of confidentiality of such records adopted by the Board must yield to the greater interest of assuring substantial justice to the plaintiffs. In summary, we hold that plaintiffs have the legitimate interest and status which entitles them to inspect and copy the public records which they seek.
Affirmed.