IRVAL REALTY INC. *ET AL.*, PLAINTIFFS-RESPONDENTS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued April 11, 1972—Decided July 25, 1972.

*Mrs. Marilyn Loftus Schauer,* First Assistant Attorney General, argued the cause for appellant (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mrs. Schauer,* of counsel; *Mr. Richard Pisacane,* Deputy Attorney General, on the brief).

*Mr. Jay H. Greenblatt* argued the cause for respondents (*Messrs. Greenblatt and Greenblatt,* attorneys; *Mr. Jay H. Greenblatt,* of counsel, and on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J. Plaintiffs instituted this action in lieu of prerogative writ against defendant, Board of Public Utility Commissioners, asserting a right to inspect records and reports to which they had been denied access by the Board. The trial court granted plaintiffs' motion for summary judgment and directed that the records be produced. On appeal the judgment of the trial court was affirmed by the Appellate Division. 115 *N. J. Super.* 338 (1971). We granted defendant's petition for certification. 59 *N. J.* 290 (1971). The original judgment has been stayed throughout the course of judicial review.

On May 5, 1969, a gas explosion occurred on property in Washington Township, Gloucester County, where plaintiff, Eastern Turkey, Inc., was operating a turkey farm. The premises are owned by plaintiff, Irval Realty, Inc. The explosion caused substantial property damage but no personal injuries.

On July 30, 1969, a similar but unrelated incident occurred in Newfield, also in Gloucester County. This explosion took place on premises then owned by Eleanor Papalardo, wife of plaintiff, Philip Papalardo. As a result of the injuries she sustained Eleanor Papalardo died.

The claimants seeking compensation for damages and injuries resulting from each explosion commenced separate suits. Both actions were initiated against South Jersey Gas Company, the utility supplying gas to the respective premises

and allegedly responsible for the accidents. This utility is not a party to the present proceedings. In due course application was made on behalf of the plaintiffs in both actions to the Board of Public Utility Commissioners, requesting to be allowed to inspect and copy certain reports which pertained to each of the accidents. The requests were denied. The reports which are sought to be examined are of two types. One kind of report is prepared by the utility and filed with the Board; the other type is an investigation report prepared by the Board's own staff.

The report prepared by the utility is submitted in response to *N. J. A. C.* 14:11–5.4, a rule promulgated by the Board requiring utilities to keep a record of and report to the Board all accidents wherein service to the public is adversely affected and wherein the safe conduct of the utility's business is affected. Such a report includes the name and address of the utility, the date and place of the accident, the effect of the accident upon service in the area, details of the accident itself, what corrective measures were taken and, finally, any recommendations the utility may care to offer to avoid a recurrence.

The second type of report, that customarily prepared by a staff member of the Board, includes many of the same kinds of data listed above, and also provides for collating information procured from occupants, neighbors, witnesses, utility representatives at the scene of the accident and policemen or firemen.

It is quite apparent that the information contained in these reports might normally be expected to be of very great help to any plaintiffs, such as those before us, who seek compensation for loss occasioned by gas explosions.

Having been denied access to these reports, the plaintiffs in the two damage suits, who collectively are the plaintiffs here, commenced this action claiming a right to the information contained in these documents by virtue of the so-called Right to Know Law, *L.* 1963, *c.* 73 now *N. J. S. A.* 47:1A–1 *et seq.* This statute declares it to be the policy of this State that public records shall be readily accessible for examination

by the citizens of the State, with certain exceptions designed to protect the public interest. It goes on to provide for a broad right of inspection of public records including the right to make or purchase copies. Excepted from the material that is thus made generally available are, *inter alia,* such records as may be removed from this category by "executive order of the Governor" or ". . . by any regulation promulgated under the authority of any . . . executive order of the Governor." *N. J. S. A.* 47:1A-2.

Shortly after the adoption of this statute Governor Hughes, on September 30, 1963, issued an Executive Order delegating to the head of each principal department of the executive branch of government the authority to adopt regulations, from time to time, setting forth what records should not be deemed public records within the reach of the foregoing statute. Acting pursuant to this authority, the Board of Public Utility Commissioners adopted the following regulation:

> All records which are required to be made, maintained or kept by and for the Board which relate to accidents and investigation of accidents concerning public utilities and to safety inspections and surveys of property and equipment of public utilities shall not be deemed public records copies of which may be purchased or reproduced under the provisions of Chapter 73, P. L. 1963. [*N. J. A. C.* 14:3-6.5(d)]

It is essentially upon this regulation that the Board relies in its refusal to allow access to the records in question. It is further argued by the Board that unless such reports from utility companies remain confidential, the utilities will be disinclined to suggest ways and means whereby such accidents may be prevented in the future, for fear that such proposals may be employed to their detriment by damage claimants.

In affirming the trial court judgment in favor of plaintiffs, the Appellate Division concluded that the right of the Governor, by executive order, and of the Board, by regulation, to exclude public records from disclosure was circumscribed by *N. J. S. A.* 47:1A-1, which indicates that such exclusions are intended to be limited to those made necessary in order to

protect the public interest. 115 *N. J. Super, supra,* at 344. It went on to consider the arguments that had been advanced in support of and against disclosure, as a matter of public policy, and determined that the adverse effect upon the public resulting from inspection was here clearly outweighed by the plaintiffs' important need to receive all reasonable assistance in the prosecution of their claims. *Id.* at 345.

We agree with the conclusion reached both by the trial court and the Appellate Division, whose judgment we affirm. But we prefer to amplify somewhat the basis of the decision.

█ A person seeking access to public records may today consider at least three avenues of approach. He may assert his common law right as a citizen to inspect public records; he may resort to the Right to Know Law, *N. J. S. A.* 47:1A–1 *et seq.,* or, if he is a litigant, he may avail himself of the broad discovery procedures for which our rules of civil practice make ample provision.

█ At common law a citizen had an enforceable right to require custodians of public records to make them available for reasonable inspection and examination. It was, however, necessary that the citizen be able to show an interest in the subject matter of the material he sought to scrutinize. Such interest need not have been purely personal. As one citizen or taxpayer out of many, concerned with a public problem or issue, he might demand and be accorded access to public records bearing upon the problem, even though his individual interest may have been slight. *Ferry v. Williams,* 41 *N. J. L.* 332 (Sup. Ct. 1879); *Taxpayers Association v. City of Cape May,* 2 *N. J. Super.* 27 (App. Div. 1949); *Moore v. Board of Chosen Freeholders of Mercer County,* 76 *N. J. Super.* 396 (App. Div. 1962), mod. 39 *N. J.* 26 (1962). Yet some showing of interest was required.

█ The Right to Know Law, *N. J. S. A.* 47:1A–1 *et seq.,* seems to require no such showing. Its intention, as we read the statute, is to afford broad access to public records to *all* citizens, whether or not they are able to demonstrate any personal or particular interest in the material which they seek

to examine. In support of this conclusion we note in the first place that the statute itself contains no requirement of personal or other interest. On its face it applies to every citizen alike. Secondly, it seems clear that such was the interpretation placed upon it at the time of its enactment. Thus in a press release, which forms part of defendant's appendix, dated about 10 days before the act took effect, Governor Hughes said,

> The purpose of Chapter 73 [The Right to Know Law], however, is to make readily available to *the general public* official records of government with the right to inspect and obtain copies of those records. The power to exclude documents therefrom is intended to be exercised only where it would not be in the interest of the public to permit *indiscriminate* disclosure or copying of certain records. [Emphasis added]

Again, in an Executive Order of August 1, 1963, one month after the law had taken effect, the same Governor referred to the "indiscriminate exposure" of records for which the statute provided and added that such exposure was "without regard to the motivation of those seeking to inspect or copy." Thus the right given by the statute may differ from the common law right of access to public records. The latter requires a showing of interest and applies generally to all public records, broadly defined. The former is a right available to any member of the general public but the range of access is limited by the definitions and exemptions appearing in the statute. We should add that the statute clearly was not intended to diminish or in any way curtail the common law right of examination. That right remains unaffected by this legislation.

A third approach that might be employed by persons such as these plaintiffs, seeking to examine public records, would be to resort to the broad discovery procedures embodied in our rules of civil practice. This avenue is of course open only to a litigant; there must be a suit pending. Since, however, these plaintiffs have not sought relief in this manner, we do no more than mention this possibility.

In presenting their case before us plaintiffs have somewhat amplified their grounds for relief and now urge that they are entitled to the information they seek both under the statute and, as well, by rule of common law. By thus asserting a common law right of inspection, plaintiffs, whose interest in the matter is clear, free themselves from the restrictive definitions and exemptions imposed by the statute. We think, qualified by what is said below, that they are entitled to succeed upon either ground.

As to the statutory right, we agree with the Appellate Division that the Legislature did not intend that the power of excluding records from the public domain, given to the Governor, and by him delegated to departments in the executive branch of government, should be unlimited. Rather we concur in the view that the power was intended to be exercised only when necessary for the protection of the public interest. This was also the view entertained by the Chief Executive when the bill was first submitted for gubernatorial approval. In a message to the General Assembly requesting reconsideration of certain features of the proposed enactment, Governor Hughes, on May 6, 1963, said,

> I am in full agreement with this aspect of the bill. Any member of the general public should have the unobstructed opportunity to review the public records that are kept and maintained by our State and local governments unless the disclosure of such documents should impair the ability of the State to operate or expose to needless scrutiny confidential information about our citizens such as that contained in tax returns and similar reports.

Furthermore the Governor's press release, from which we have quoted above, included the following admonition to those department heads who by the Executive Order were given power to exclude selected public records,

> I would caution the officials granted authority under this order to exercise this authority sparingly and only to the extent required by the public interest.

██ On the other hand in pressing their common law remedy plaintiffs' case is perhaps even stronger. They have a clear personal interest in examining the reports as an aid in preparing their damage claims for trial. This right to inspect and examine is, as we have said, curtailed in no way by the Right to Know Law.

██ Defendant has also argued that these reports do not come within the scope of the statute since they are not ". . . required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State. . . ." *N. J. S. A.* 47:1A–2. The reports submitted by the utilities are certainly public records within this definition since the regulation of the Board which is discussed above, *N. J. A. C.* 14:11–5.4, has the force of law and requires that such reports be made. Whether the investigation reports prepared by members of defendant's staff meet this definition is less clear, but need not be decided here since they certainly qualify as public records within the scope of the common law rule. See *Josefowicz v. Porter,* 32 *N. J. Super.* 585, 591 (App. Div. 1954).

 Although we hold, as did the courts below, that as between the interest of the public in maintaining the confidentiality of these records and the interest of the plaintiffs in examining them, the latter outweighs the former, nevertheless the facts of another case may quite possibly call for a different result. It may be that some material in a report such as those we are considering should not be revealed because the public interest will be best served by its remaining secret.[1] In all future cases of this sort, where a controversy arises, the decision should be made by the trial judge to whom the issue will be presented, either on motion or otherwise. He should call for and examine the report or other record. If in his sound judgment some part or all of the information

---

[1]Copies of the reports sought by plaintiffs have been submitted to us and our conclusion that they may safely and properly be examined by the plaintiffs is based upon our examination of them.

therein contained should not be revealed, he will so rule. If the whole of the record cannot be shown to the party seeking discovery, but certain portions may be, then the judge should extract these portions and make them available for perusal or direct that such other practical steps be taken as will achieve the desired result. This kind of selective practice has for some time been successfully followed with respect to such sensitive documents as income tax returns, corporate records that touch upon trade or business secrets and the like. *Ullmann v. Hartford Fire Ins. Co.*, 87 *N. J. Super.* 409 (App. Div. 1965).

■ We conclude with a brief word as to procedure. Here the plaintiffs have instituted a plenary suit and have done so in reliance upon *Bzozowski v. Penn-Reading Seashore Lines*, 107 *N. J. Super.* 467 (Law Div. 1969). It was there held that in all cases invoking the Right to Know Law relief must be sought in a plenary action. The court based this conclusion upon *N. J. S. A.* 47:1A–4, which provides that anyone seeking relief under this statute *may* institute an action in lieu of prerogative writ. We think this provision should be held only to apply in a mandatory sense when there is not already an action pending to which the applicant for relief is a party. Our "single controversy" doctrine would seem to dictate this result. *Ajamian v. Schlanger*, 14 *N. J.* 483 (1954); *Falcone v. Middlesex County Medical Society*, 47 *N. J.* 92 (1966). Where there is a pending action, full relief of the type sought can readily and more expeditiously be sought by taking appropriate steps within the cause.

For the foregoing reasons the judgment of the Appellate Division is hereby affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.