124 N.J. Super. 523 (1973)
308 A.2d 35
CITIZENS FOR BETTER EDUCATION, MARILYN WHITHAM, JERROTHIA RIGGS, BARBARA BROWN, DR. JOHN W. ROBINSON, JOYCE CARTER, SANDRA ARMSTRONG, VERA BENJAMIN, JACQUELINE HARPER, EDITH CURLY, ALMA G. PETERSON, AND DELORIS MOYE, PETITIONERS-APPELLANTS,
v.
BOARD OF EDUCATION OF THE CITY OF CAMDEN AND DR. CHARLES SMERLIN, SUPERINTENDENT OF SCHOOLS, CAMDEN COUNTY, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1973.
Decided July 12, 1973.
*525 Before Judges CARTON, MINTZ and SEIDMAN.
*526 Mr. Robert D. Pitt argued the cause for appellants (Mr. Carl S. Bisgaier, Director Camden Regional Legal Services, Inc., attorney).
Mr. Raymond Kassekert argued the cause for respondents (Mr. Leonard A. Spector, attorney).
Mr. George F. Kugler, Jr., Attorney General of New Jersey, filed a statement in lieu of brief on behalf of the New Jersey State Board of Education (Mr. Lewis M. Popper, Deputy Attorney General, of counsel).
The opinion of the court was delivered by SEIDMAN, J.A.D.
This is an appeal by petitioners pursuant to R. 2:2-3(a) (2) from an affirmance by the New Jersey State Board of Education of an adverse decision of the Commissioner of Education.
The principal question is whether petitioners have a statutory or common law right to require respondent school board to disclose the results of standardized achievement tests on a school-by-school and grade-by-grade basis. They do not seek access to the records of individual pupils.
Citizens for Better Education is an unincorporated association which describes itself as "an informal group of citizens, parents, and professional people who take an active interest in education in general and in the schools of the City of Camden, in particular." The individual petitioners are residents of Camden, most of whom are parents of children enrolled in the school system. They had requested the local board of education to make public the results of standardized achievement tests administered in the public schools of the city. Specifically, they sought the median reading level scores by school and grade for the years 1968 to 1970, and also, on an annual basis, the test results in a form which gave the mean or median for each grade in each school and the national norm for each grade. It is not disputed that reports of the test results in the form sought are in respondents' *527 possession. The board furnished test results by grade but regionally by groups of schools. It has refused to give the data by grade and by school as requested.
Petitioners then sought an order from the Commissioner of Education requiring the local board and its superintendent to disclose the information in the form sought by petitioners. Testimony and documentary evidence were presented at a hearing conducted June 1, 1971, by a hearing officer appointed by the Commissioner. On December 20, 1971 the Commissioner issued a decision adverse to petitioners. On appeal to the State Board of Education the decision was affirmed. This appeal followed.
The Commissioner characterized the testimony presented as "consist[ing] almost entirely of expressions of differing points of view of educational philosophy and both personal and professional judgment, regarding the role of the public schools with respect to community interest generally, and certain specific concerns of a diverse group of citizens." He saw the issue as turning on the discretionary exercise of power by the school board. He reasoned that "[s]ince local boards of education are not required by law to administer comprehensive achievement tests of basic skills, the test-results data sought by petitioners do not constitute a public record"; consequently, petitioners' right to the test results was not protected by the so-called Right-to-Know Law, N.J.S.A. 47:1A-1 et seq. He said, further, that the board's decision to publish the data by region was an exercise of its discretionary authority which the Commissioner would not disturb in the absence of a showing that it was arbitrary or unreasonable.
We disagree with the conclusions of the Commissioners.
If the test results are available in the form desired by petitioners, as they seem to be, the question to be resolved is whether they are public records. If they are, petitioners would have a statutory right to inspect them. The Right-to-Know Law, N.J.S.A. 47:1A-2, declares that every citizen of this State, during regular business hours, shall *528 have the right to inspect and copy or purchase copies of public records. No showing of any personal or particular interest in the material is required. Irval Realty v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372-373 (1972). There is also a common law right to inspect such records. In the Irval Realty case the court said:
At common law a citizen had an enforceable right to require custodians of public records to make them available for reasonable inspection and examination. It was, however, necessary that the citizen be able to show an interest in the subject matter of the material he sought to scrutinize. Such interest need not have been purely personal. As one citizen or taxpayer out of many, concerned with a public problem or issue, he might demand and be accorded access to public records bearing upon the problem, even though his individual interest may have been slight. Ferry v. Williams, 41 N.J.L. 332 (Sup. Ct. 1879); Taxpayers Association v. City of Cape May, 2 N.J. Super. 27 (App. Div. 1949); Moore v. Board of Chosen Freeholders of Mercer County, 76 N.J. Super. 396 (App. Div. 1962), mod. 39 N.J. 26 (1962). Yet some showing of interest was required. [at 372]
The Commissioner's conclusion that since local boards are not required to administer comprehensive achievement tests the results thereof are not public records is unsound. The fact that something need not be done does not mean that if it is done the report thereof is not a public record.
To ascertain what is a public record we look first to the Right-to-Know Law, N.J.S.A. 47:1A-2, which provides, with exceptions not applicable here, that
* * * [A]ll records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or of any political subdivision thereof * * * shall, for the purpose of this act, be deemed to be public records * * *.
In the Destruction of Public Records Law (1953), N.J.S.A. 47:3-16, the term is defined, in pertinent part, as
* * * [A]ny paper, written or printed book, document or drawing, map or plan, photograph, microfilm, sound-recording or similar device, or any copy thereof * * * that has been received by any such *529 officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, in connection with the transaction of public business and has been retained by such recipient or its successor as evidence of its activities or because of the information contained therein. [Emphasis supplied]
Considering these statutes in pari materia, the test results clearly qualify as public records. It is noted, moreover, that the rules of the State Board of Education relating to the inspection of school records provide, among other things, that "pupil records may be open to inspection by persons who, in the judgment of the board of education or any officer or employee of the board designated by the board, have a legitimate interest in the records for purposes of systematic education research, guidance and social service." N.J.A.C. 6:3-4(b). See also, N.J.S.A. 18A:36-19.
Additionally, it is undisputed that the rules and regulations contained in the Administrative Manual of the Camden Board of Education direct the Supervisor of Guidance Services to coordinate system-wide testing programs and to report the results of tests administered. Since the reporting of test results is required by administrative rule, such reports are public records within the statutory definition. Irval Realty v. Bd. of Pub. Util. Comm'rs, supra, 61 N.J. at 375.
There is no merit to the contention that since a summary of the report was publicly released, the refusal to furnish the data requested by petitioners was a proper exercise of discretionary authority. The report contained information which a citizen may have a legitimate interest in knowing, in which case there is no valid reason for withholding the information from public view. DeLia v. Kiernan, 119 N.J. Super. 581, 584 (App. Div. 1972), certif. den. 62 N.J. 74 (1972). Respondents' further argument that the information in question is highly technical and intended for use by professional, qualified educators, and that the "results in the hands of non-qualified evaluators would only lead to erroneous inferences," is specious. These conjectured *530 fears are not sufficient to justify keeping from petitioners a public record which, by statute or by common law, they can rightfully inspect. Cf. Accident Index Bureau, Inc. v. Hughes, 46 N.J. 160 (1965). See also, Bzozowski v. Penn-Reading Seashore Lines, 107 N.J. Super. 467 (Law Div. 1969). Petitioners are endeavoring to ascertain what deficiencies, if any, exist in any grade or school. This is a matter of legitimate public concern and clearly outweighs any conceivable interest there may be in maintaining the confidentiality of the information in the form sought.
Reversed. Respondents are ordered to permit petitioners to inspect and copy reports or such portions thereof as reveal the results of city-wide standardized achievement tests by grade and school, as sought in their petition, or to purchase copies thereof. No costs.