RICHARD D'ELENA, INDIVIDUALLY AND AS PRESIDENT OF BURLINGTON COUNTY COUNCIL #16 OF NJCSA, PLAINTIFF-RESPONDENT, v. BURLINGTON COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 22, 1985—Decided July 25, 1985.

110 

Before Judges MATTHEWS, FURMAN and HAVEY.

*Cynthia J. Nadolski,* Assistant Burlington County Solicitor, argued the cause for appellant (*Michael J. Hogan,* Burlington County Solicitor, attorney).

*John A. Sweeney* argued the cause for respondent (*Sweeney and Sweeney,* attorneys).

The opinion of the court was delivered by

MATTHEWS, P.J.A.D.

Plaintiff instituted this action in lieu of prerogative writs to compel the Burlington County Board of Chosen Freeholders to release the names and home addresses of its employees under the Right to Know Act, *N.J.S.A.* 47:1A–1 *et seq.* The trial judge granted plaintiff's motion for summary judgment and ruled that this list was a public record under that act.

The Burlington County Board has approximately 1,593 employees; 1,448 classified employees and 145 unclassified. On March 15, 1984 the Business Administrator of Burlington Council # 16 NJCSA, CWA Local 1044, wrote to the Clerk of the County of Burlington, requesting a list "showing employees' addresses."

On March 21, 1984, plaintiff, as president of Burlington Council # 16, wrote to Steven Raymond, the Burlington County prosecutor, stating that Burlington Council # 16 had become affiliated with another union and it was "necessary to update our bargaining unit records." He requested a list of "all employees in our bargaining unit (members and non-members), including each employees' [*sic*] department number, social security number and home address." John A. Sweeney, attorney

for plaintiff, also requested such a list in a letter written to Juliana on April 18, 1984, and a letter to Cynthia Nadolski, defendant's attorney, on May 4, 1984.

On May 17, 1984, Nadolski wrote to Sweeney responding to his request. She stated that the board had met and decided not to release the list on the grounds that (1) the information was not a "public record" as defined by the Right to Know Act, and (2) release of the information would be an "invasion of personal privacy." As a compromise to allow plaintiff to receive the information by "less intrusive means," the board suggested sending a letter to each employee informing him or her that Council # 16 wanted the information and asking their permission to release it. This letter would be included in the employees' paycheck.

On June 5, 1984 plaintiff instituted this action and moved for summary judgment. Plaintiff alleged that he was a citizen who had been refused a copy of a list of the board's employees' names and home addresses, which list the board "is required by law to maintain and/or does maintain." He alleged that the board's refusal to release this list violated the act. Plaintiff asked for a judgment directing the board to provide this list and for taxed costs and counsel fees.

On June 18, 1984, the Law Division judge issued a letter opinion granting plaintiff's motion for summary judgment. He ruled that while no law had been pointed out requiring the board to keep a list of its employees' names and home addresses, the list obviously existed and should be released even if it was not a record required to be kept within the meaning of the act. He restricted plaintiff's use of the list "for his own purposes, as an individual and as a union official."

On June 7, 1984, defendant had moved for an order allowing it to notify its employees that plaintiff had filed a complaint to compel release of their names and addresses. After a hearing the judge reserved decision. In his letter opinion, he stated that it was "my opinion that the County has a right to provide

such notice without a court Order." Therefore, he approved an order authorizing, but not requiring notice, and withheld execution of the order until July 27, 1984. On July 24, 1984, an order was entered granting defendant's motion to notify its employees, effective June 7, 1984.

On July 25, 1984, Nadolski wrote to the judge asking for reconsideration of his decision because the board had sent notice to its employees of plaintiff's complaint, and many of them had objected to the release of their home addresses. Defendant also asked for an opportunity to oppose plaintiff's motion for attorneys' fees which had apparently been granted *ex parte* after plaintiff had submitted a certification. After a hearing, the judge denied defendant's motion for reconsideration and awarded plaintiff $500 in attorneys' fees and $75 in court costs. Judgment was entered accordingly on August 7, 1984. An order was subsequently entered staying the release of the list pending appeal.

Defendant contends that the judge erred by ruling that the names and addresses of its employees should be released under the act.

*N.J.S.A.* 47:1A–2 provides:

Except as otherwise provided in this act or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor, all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State or any of its political subdivisions, or by any official acting for or on behalf thereof (each of which is hereinafter referred to as the "custodian" thereof) shall for the purposes of this act, be deemed to be public records. Every citizen of this State, during the regular business hours maintained by the custodian of such records, shall have the right to inspect such records. . . .

In his letter opinion, the judge ruled that under a liberal construction of the act, the names and addresses of defendant's employees should be released. He noted that:

> No express "law" has been pointed to which requires the Board of Freeholders to maintain a list of the names and addresses of its employees. It is obvious, however, that such information must be maintained by the County for numerous purposes and that, at the very least, administrative rules or directives, or Freeholder resolutions, or informal rules require the maintenance of employee name and address records. That information is necessary for purposes of the workmen's compensation insurance, for payroll purposes, for tax purposes and in order to carry out the County's residency requirements. If an actual list is not available the records which contain the names and addresses must be available to the public.

Under *Citizens for Better Ed. v. Bd. of Ed., Camden,* 124 *N.J.Super.* 523 (App.Div.1973), (*Citizens*), discussed *infra,* the judge ruled that this list could be released if it existed even if it was not required by law to be maintained.

A citizen who wants to see public records has three ways of obtaining access to them. The citizen may assert "his common law right as a citizen to inspect public records; he may resort to the Right to Know Law ... or, if he is a litigant, he may avail himself of the broad discovery procedures for which our rules of civil practice make ample provision." *Irval Realty v. Bd. of Pub. Util. Commissioners,* 61 *N.J.* 366, 372 (1972). The existence of the act does not affect the existence of the other means of access. *Id.* at 373.

■ The act is designed to promote "a free flow of information in order to ensure an informed citizenry." *Nero v. Hyland,* 76 *N.J.* 213, 221 (1978). The act does not require the citizen to show any interest in the material which he or she wants to see. *Irval, supra,* 61 *N.J.* at 372–373. It exempts records which relate to investigations in progress, *N.J.S.A.* 47:1A–3, and records which have been exempted by an order of the Governor or regulation or statute. *N.J.S.A.* 47:1A–2. The Governor does not have unlimited power to exempt material; he or she must act "for the protection of the public interest." *N.J.S.A.* 47:1A–1. A citizen who has been denied access to records may bring a complaint in lieu of prerogative writs; if he or she prevails, he or she may receive taxed costs and an attorney's fee up to $500. *N.J.S.A.* 47:1A–4.

The threshold issue in a case involving the act is whether a document is a record "required by law to be made, maintained or kept on file." *N.J.S.A.* 47:1A–2. In *Citizens, supra,* 124 *N.J.Super.* at 526, petitioner sought the release of the results of standardized achievement tests "on a school-by-school and grade-by-grade basis." The court interpreted the act *in pari materia* with the destruction of public records law, *N.J.S.A.* 47:3–15 *et seq.,* to find that the results of the tests were public records and stated that: "The fact that something need not be done does not mean that if it is done the result thereof is not a public record." *Id.* at 528. In authorizing release of the information, it also found, however, that the test results were required by an administrative rule. *Id.* at 529.

In *Nero,* 76 *N.J.* at 219–220, this court and trial judges had used *Citizens* to determine whether a "four-way" investigative check of a potential gubernatorial appointee was a public record. The Court disapproved of the *Citizens* approach and stated that "we cannot approve of any expansion of the plain wording of the definition of public record under that Act." *Id.* at 221. It held that the character check was not a public record required by law to be maintained under the act and could not be released under the act. *Ibid.* In *In re Toth,* 175 *N.J.Super.* 254, 259 (App.Div.1980), we followed the definition of "public record" contained in *Nero.*

■ We conclude that the judge erred in granting plaintiff's motion for summary judgment. He apparently started from the premise that defendant had a list of its employees' names and addresses. It was erroneous, however, to use the *Citizens* approach for the proposition that if the list existed, its existence alone could make it a public record releasable under the act. Under *Nero,* the document must be required by law to be maintained or kept in order to be released; it did not approve of the expansion of the definition of "required by law" used in the *Citizens* case.

Since there is no law or regulation requiring the list of employees' names and home addresses to be kept, under *Nero*, 76 *N.J.* at 221, such a list is not a public record and cannot be released under the act. The executive orders discussed above do not require the maintenance or creation of personnel and pension records; they exempt portions of records which are already required to be kept.

In *Collins v. Camden County Department of Health*, 200 *N.J.Super.* 281, (Law Div.1984), a newspaper reporter sought personnel screening committee evaluations under the act. The judge granted summary judgment in favor of the agency because the evaluation was not specifically required to be kept and was not a public record. As an alternate ground, he concluded that even if he assumed the evaluations were public records, they were exempt under the executive orders discussed above.

Defendant next contends that plaintiff is not entitled to receive the address of its employees under his common law right to inspect public documents.

Plaintiff's complaint alleges that he had a right under the act to see the list; he did not allege that he had a common law right to do so. In his brief in support of summary judgment he did not assert the existence of a common law right; in his brief on appeal, he states, in response to appellant's second issue, "[a]ppellant's entire second legal argument is clearly meritless and appears to constitute an attempt to misstate the law." The trial judge did not mention this ground in his decision below.

As we have noted, the existence of a right to see documents under the act does not abrogate a person's common law right to inspect documents. The elements necessary to prevail under the common law right are different, however. First, the definition of public record is not the same as that contained in *N.J.S.A.* 47:1A–2. The common law definition is "one required by law to be kept, or necessary to be kept in the

discharge of a duty imposed by law ... or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office." *Josefowicz v. Porter,* 32 *N.J.Super.* 585, 591 (App.Div.1954). Second, a citizen must show "a lawful, proper and legitimate purpose not adverse to the public interest." *Accident Index Bureau, Inc. v. Hughes,* 83 *N.J.Super.* 293, 298 (App.Div.1964), aff'd 46 *N.J.* 160 (1965).

In both *Irval, supra,* and *Nero, supra,* the Court considered whether a document not released under the act could be released to a citizen in furtherance of his common law right. In *Nero,* 76 *N.J.* at 221–227, the Court considered the question of whether the four-way character check should be released to the citizen who was the subject of the check. It decided that the public's interest in having complete background checks of people appointed to public office and the chilling effect which would occur if people who gave such information knew that the person about whom they gave it could see it, outweighed the person's interest in seeing the document. *Ibid.* That decision was clearly the result of a balancing which is to be applied when someone seeks the release of information under a common law right when the information is not releasable under the act. In *Irval,* 61 *N.J.* at 375–376, the Court released investigative reports concerning accidents involving public utilities; it had examined them, and the courts below had decided that the balance favored disclosure. These cases show only that under certain circumstances, someone can be entitled to receive information pursuant to his or her common law right when he or she could not receive it pursuant to the act.

We do not have to consider this issue. Plaintiff has not asserted his common law right at any stage in the proceeding, and in our judgment the record here would not support such a right.

Reversed.