**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

> SUPERIOR COURT OF NEW JERSEY
> APPELLATE DIVISION
> DOCKET NO.  A-1673-22

ANTONIO FUSTER and
BRIANNA DEVINE,

      Plaintiffs-Appellants,

v.

TOWNSHIP OF CHATHAM
and GREGORY LACONTE,
in his official capacity as
Records Custodian,

      Defendants-Respondents.

_____

> | **APPROVED FOR PUBLICATION** |
> | :---: |
> | **December 27, 2023** |
> | **APPELLATE DIVISION** |

Argued November 14, 2023 – Decided December 27, 2023

Before Judges Rose, Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1814-22.

CJ Griffin argued the cause for appellants (Pashman Stein Walder Hayden, PC, attorneys; CJ Griffin, on the briefs).

Peter Joseph King argued the cause for respondents (King Moench & Collins, LLP, attorneys; Peter Joseph King, on the brief).

The opinion of the court was delivered by

PEREZ FRISCIA, J.S.C. (temporarily assigned).

Plaintiffs Antonio Fuster and Brianna Devine appeal from a January 17, 2023 Law Division order which entered judgment in favor of defendants Township of Chatham and its custodian of records Gregory LaConte. Plaintiffs had requested, under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access, the release of a body worn camera (BWC) video-recorded statement that Fuster had provided to a Chatham Police Department (Department) officer regarding allegations of sexual misconduct against plaintiffs' special needs son. The statement was recorded pursuant to the Body Worn Camera Law (BWCL), N.J.S.A. 40A:14-118.3 to -118.5. Defendants denied release of the recording, claiming that the video was confidential. After hearing argument on the order to show cause seeking disclosure, the motion judge found the BWC recording was exempt under OPRA and not subject to release under the common law right of access. As a result, the judge denied plaintiffs' OPRA fee application.

Plaintiffs' argument that the BWCL's exemption provision, N.J.S.A. 40A:14-118.5(*l*), abrogates OPRA's exemptions is without merit. We conclude OPRA's exemption, N.J.S.A. 47:1A-9(b), applies to preclude disclosure of the BWC recording because our case law has long-established that information received by law enforcement regarding an individual who was not arrested or charged is confidential and not subject to disclosure. See N. Jersey Media Grp.,

Inc. v. Bergen Cnty. Prosecutor's Off., 447 N.J. Super. 182, 204 (App. Div. 2016). A review of the plain language of the BWCL's inspection provision, N.J.S.A. 40A:14-118.5(k), which provides that a review of a BWC recording is subject to OPRA, demonstrates the four exemptions listed in N.J.S.A. 40A:14-118.5(*l*) are in addition to OPRA's exemptions. Further, reading OPRA in pari materia with the BWCL demonstrates the Legislature did not intend to preclude the application of OPRA's exemptions to BWC recordings.

We further reject plaintiffs' argument they are entitled to the BWC recording under the common law right of access. We conclude the common law right of access does not compel release of the BWC recording because under the balancing of interests factors established by our Supreme Court in Loigman v. Kimmelman, 102 N.J. 98, 113 (1986), law enforcement's and the individual's interests in confidentiality outweigh the public's and plaintiffs' interests in disclosure.

Therefore, we affirm the judge's order that plaintiffs were not entitled to disclosure of the BWC recording under either OPRA or the common law right of access.

I.

We discern the following pertinent facts from the record. On May 25, 2022, Fuster went to the Department to report alleged sexual misconduct

perpetrated against his son by a male relative. An investigatory interview occurred at the police station, which was recorded by an officer using a BWC. Fuster did not witness the alleged misconduct he reported.

The Department, along with other agencies, investigated the allegations and determined there was insufficient probable cause to file charges. The Department notified plaintiffs of the decision not to prosecute. Plaintiffs strongly disagreed with this determination.

Fuster emailed a request for copies of police reports and his video-recorded statement pursuant to OPRA. Ten days later, the Department's records clerk responded by email, providing copies of the police reports but denying disclosure of the video recording. The Department explained that the request for the BWC video was denied because it related to a juvenile case, which resulted in no charges.

Thereafter, plaintiffs made several requests, all of which were denied. The next day, Fuster sought the BWC video "under the [c]ommon [l]aw right of access." Fuster next requested preservation of the "recordings indefinitely in their original unaltered form." Devine also requested to review "the BWC video." On behalf of the Department, LaConte denied her request, stating "[a]fter reviewing the [video] footage, disclosure would not advance the public interest to warrant disclosure. Any disclosure could potentially impede agency

investigative functions by providing info[rm]ation potentially involving third parties, who also have a privacy right." A list of OPRA exemptions was attached.

Plaintiffs filed an order to show cause and a two-count verified complaint, seeking release of the video. Plaintiffs alleged the Department erred in denying disclosure of the BWC video because: OPRA required "readily accessible" review of the "government record" since the BWCL abrogated the application of OPRA's exemptions; and under the common law right of access plaintiffs established a "significant interest" and "need." Plaintiffs also requested attorney's fees under OPRA. Defendants filed an answer and opposition.

After argument, the judge entered an order, accompanied by a cogent written statement of reasons, granting judgment in favor of defendants and denying plaintiffs' application for attorney's fees.

On appeal, plaintiffs argue the judge's order was erroneous because: the clear language of the BWCL provisions, N.J.S.A. 40A:14-118.5(j)(2) to (3), (k), mandates disclosure of the video recording as no exemption exists under N.J.S.A. 40A:14-118.5(*l*) and OPRA's exemptions are abrogated; a common law right of access to the video exists; and they are entitled to attorney's fees under OPRA. In opposition, defendants maintain disclosure is precluded under OPRA because the BWCL does not preempt OPRA's exemptions, plaintiffs do not

prevail under the common law balancing of interests, and there is no entitlement to attorney's fees.

## II.

"[D]eterminations about the applicability of OPRA and its exemptions are legal conclusions" reviewable de novo. ACLU of N.J. v. Cnty. Prosecutors Ass'n of N.J., 474 N.J. Super. 243, 256 (App. Div. 2022) (quoting Carter v. Doe (In re N.J. Firemen's Ass'n Obligation), 230 N.J. 258, 273-74 (2017)), certif. granted, 253 N.J. 396 (2023). Our review of "the determination regarding the common law right of access is de novo as well." Bergen Cnty. Prosecutor's Off., 447 N.J. Super. at 194.

To effectuate the Legislature's intent when interpreting a statute, a court must first examine the plain language and ascribe to its words their ordinary meaning. Conforti v. County of Ocean, 255 N.J. 142, 163 (2023). "Where statutory language is clear, courts should give it effect unless it is evident that the Legislature did not intend such meaning." Bubis v. Kassin, 184 N.J. 612, 626 (2005) (quoting Rumson Ests., Inc. v. Mayor of Fair Haven, 177 N.J. 338, 354 (2003)). We "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." W.S. v. Hildreth, 252 N.J. 506, 518 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "If the language [of a

statute] is clear, the court's job is complete." In re DiGuglielmo, 252 N.J. 350, 360 (2022) (quoting In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014)). On appeal, the interpretation of a statute is reviewed de novo. In re Registrant H.D., 241 N.J. 412, 418 (2020).

"When 'a literal interpretation would create a manifestly absurd result, contrary to public policy,' or 'would lead to results inconsistent with the overall purpose of the statute,' such interpretations should be rejected in favor of the spirit of the law." Bergen Cnty. Prosecutor's Off., 447 N.J. Super. at 199 (quoting Hubbard v. Reed, 168 N.J. 387, 392-93 (2001)). A court may examine "legislative history, committee reports, and contemporaneous construction" to determine legislative intent. DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)). "When considering the meaning of legislation, we assume the Legislature is 'thoroughly conversant with its own legislation and the judicial construction of its statutes.'" Est. of Burns, ex rel. Burns v. Care One at Stanwick, LLC, 468 N.J. Super. 306, 319 (App. Div. 2021) (quoting Brewer v. Porch, 53 N.J. 167, 174 (1969)).

"When two or more statutory schemes are analyzed, they 'should be read in pari materia and construed together as a unitary and harmonious whole.'" Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87, 103-04 (2023) (quoting State v. Nance, 228 N.J. 378, 395 (2017)). "OPRA requires government agencies to

balance the public's strong interest in disclosure of government records 'with the need to safeguard from public access personal information that would violate a reasonable expectation of privacy.'" Scheeler v. Off. of the Governor, 448 N.J. Super. 333, 348 (App. Div. 2017) (quoting Burnett v. County of Bergen, 198 N.J. 408, 427 (2009)).

## A.

## BWCL and OPRA

The Legislature enacted the BWCL, which became operative on June 1, 2021, mandating that officers utilize "a [BWC] that electronically records audio and video" to capture their activities, with limited exceptions. N.J.S.A. 40A:14-118.3(a). The BWCL provides that a BWC "shall be activated whenever [an] officer is responding to a call for service or at the initiation of any other law enforcement or investigative encounter between an officer and a member of the public." N.J.S.A. 40A:14-118.5(c)(1). The recording must "be retained for not less than 180 days from the date it was recorded . . . and shall be subject to . . . additional retention periods" such as a minimum three-year period. N.J.S.A. 40A:14-118.5(j).

The BWCL specifically clarifies that BWC video recordings are not considered "criminal investigatory record[s]"[1] exempt from disclosure under OPRA and provides four exemptions from "public inspection" of BWC video under N.J.S.A. 40A:14-118.5(*l*).[2] The exemptions apply to recordings that: are "not subject to a minimum three-year retention"; "capture[] images involving an encounter about which a complaint has been registered" and the complainant requests non-disclosure; are subject to a minimum three-year retention period and law enforcement determines they are of "evidentiary or exculpatory" value or for training purposes; and a member of the public, a parent or legal guardian, or next of kin for a decedent who is the subject of the video recording requested non-disclosure. N.J.S.A. 40A:14-118.5(*l*), (j). However, separate from the exemption provision, under N.J.S.A. 40A:14-118.5(k), the BWCL specifies that a "member of the public, parent [,]or legal guardian . . . shall be permitted to

---

[1] Under OPRA, a "'[c]riminal investigatory record' means a record which is not required by law to be made, maintained or kept on file that is held by a law enforcement agency which pertains to any criminal investigation or related civil enforcement proceeding." N.J.S.A. 47:1A-1.1.

[2] We observe that the BWCL legislative history contemplates exemptions under OPRA and provides the criminal investigation exemption of public records does not apply. "The bill also specifies when video footage from a [BWC] is exempt from the State['s] open public records act. Recent case law has held that police video recordings are exempt from public disclosure under the State['s] open public records act because they pertain to criminal investigations." N.J. Assemb. Comm. Statement to A. 4312 (Jan. 1, 2021).

review the [BWC] recording in accordance with the provisions of [OPRA]." (Emphasis added).

Thus, in determining OPRA's application to the BWCL, we "must begin with the recognition that the Legislature created OPRA intending to make governmental records 'readily accessible' to the state's citizens 'with certain exceptions[] for the protection of the public interest.'" Gilleran v. Township of Bloomfield, 227 N.J. 159, 170 (2016) (alteration in original) (quoting N.J.S.A. 47:1A-1). To effectuate that purpose, OPRA establishes "a comprehensive framework for access to public records." Mason v. City of Hoboken, 196 N.J. 51, 57 (2008).

"The public's right to disclosure, while broad, is not unlimited." Bozzi v. City of Jersey City, 248 N.J. 274, 284 (2021). "OPRA . . . exempts more than twenty categories of records" from disclosure. Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 141 (2022) (citing N.J.S.A. 47:1A-1.1). "[I]f a document falls within one of these categories, it is not a government record and not subject to disclosure pursuant to OPRA." Commc'ns Workers of Am. v. Rousseau, 417 N.J. Super. 341, 355 (App. Div. 2010).

Accordingly, OPRA directs that "all government records shall be subject to public access unless exempt," and "a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information

with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. In assessing the sufficiency of an agency's reasons for nondisclosure, "a court must be guided by the overarching public policy in favor of a citizen's right of access." Courier News v. Hunterdon Cnty. Prosecutor's Off., 358 N.J. Super. 373, 383 (App. Div. 2003) (citing N.J.S.A. 47:1A-1). The government agency has "the burden of proving that the denial of access is authorized by law. . . . A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." N.J.S.A. 47:1A-6.

Relevant here is OPRA's disclosure exemption for government records deemed privileged or confidential. See N.J.S.A. 47:1A-1.1. N.J.S.A. 47:1A-9(b) provides:

> The provisions of [OPRA] . . . shall not abrogate or erode any executive or legislative privilege or grant of confidentiality heretofore established or recognized by the Constitution of this State, statute, court rule or judicial case law, which privilege or grant of confidentiality may duly be claimed to restrict public access to a public record or government record.

Government records involving "a person who has not been arrested or charged with an offense are entitled to confidentiality based upon long-established judicial precedent." Bergen Cnty. Prosecutor's Off., 447 N.J. Super. at 189. "Therefore, pursuant to N.J.S.A. 47:1A-9(b), an exemption exists under

OPRA that precludes a custodian of records from disclosing whether such records exist in response to an OPRA request." Ibid. Disclosure of records concerning a person who was ultimately not charged implicates "the integrity and effectiveness of law enforcement efforts for the benefit of the public at large." Id. at 204. Additionally, "the grant of confidentiality protects the privacy interest of the individual who, lacking an opportunity to challenge allegations in court, would face irremediable public condemnation." Ibid.

Although plaintiffs acknowledge OPRA generally applies to the release of law enforcement government records, they argue the BWCL, N.J.S.A. 40A:14-118.5(l), precludes law enforcement's non-disclosure under an OPRA exemption. Plaintiffs maintain OPRA's exemptions are inapplicable because the BWCL disclosure provision exclusively provides only four enumerated exemptions. Essentially, plaintiffs seek a statutory interpretation of the BWCL that abrogates OPRA's exemptions.

Plaintiffs specifically argue the BWCL prohibits the application of N.J.S.A. 47:1A-9(b)—OPRA's exemption of government records deemed confidential under "judicial case law." Plaintiffs argue the judicial precedent established in Bergen County Prosecutor's Office, 447 N.J. Super. at 189, which provides records of a person who is not arrested or charged are confidential and

not subject to disclosure, "cannot apply to a record[ing]" under the BWCL. We disagree.

It is undisputed that BWC recordings are government records. Under the BWCL, police officers are required, with limited exceptions, to initiate video recordings at a "law enforcement or investigative encounter" with "a member of the public." N.J.S.A. 40A:14-118.5(c)(1). Additionally, Fuster had standing to request review of the video as a member of the public who was the "[s]ubject of the [BWC] footage." See N.J.S.A. 40A:14-118.5(a), (k). Further, it is undisputed the four enumerated exemptions under N.J.S.A. 40A:14-118.5(*l*) are inapplicable to plaintiffs' disclosure requests. Thus, we turn to the application of OPRA's exemptions to the BWCL.

The plain language of the BWCL's inspection provision, N.J.S.A. 40A:14-118.5(k), provides that a review of a video is subject to OPRA. Thus, we conclude the exemptions listed in N.J.S.A. 40A:14-118.5(*l*) are in addition to OPRA's exemptions. To interpret the BWCL otherwise would ignore the fact that the inspection provision under subsection (k), which provides for review subject to OPRA, precedes the four exemptions enumerated in subsection (*l*). See N.J.S.A. 40A:14-118.5(k), (*l*). Subsection (*l*), as discussed above, specifically states that BWC recordings are not criminal investigatory records

under OPRA, and the enumerated exemptions relate to the BWC recordings created. See N.J.S.A. 40A:14-118.5(*l*).

We next turn to the specific OPRA exemption at issue here. N.J.S.A. 47:1A-9(b) precludes disclosure of government documents that "judicial case law" has "established or recognized" as "privilege[d]" or "confidential[]." It is well-established that disclosure of government records may be precluded because "confidentiality [exists] to protect innocent persons whose names have been mentioned but have not been charged." Daily Journal v. Police Dep't of Vineland, 351 N.J. Super. 110, 124 (App. Div. 2002). Thus, not all exemptions are "those enumerated as protected categories within the four corners of OPRA." Bergen Cnty. Prosecutor's Off., 447 N.J. Super. at 201. Nor, we discern, are the exceptions contained within the purview of the BWCL. We conclude that the video was exempt from disclosure under judicial case law.

Nonetheless, a review of the plain language of these two statutes, read as a harmonious whole, demonstrates that the Legislature did not intend to preclude the application of OPRA's recognized exemptions. Rather, under the BWCL, the Legislature: recognized and mandated recordings would not be exempt as criminal investigation records under OPRA; provided specific exemptions for

ongoing investigations;[3] and provided confidentiality for qualifying BWC recorded subjects requesting nondisclosure. The BWCL did not abolish the long-recognized confidentiality exemption afforded to uncharged individuals by judicial case law but preserved the application of existing OPRA exemptions.

Again, we note that subsection (*l*) of N.J.S.A. 40A:14-118.5, which provides the exemptions, is preceded by subsection (k), which requires even a member of the public who is the subject of a recording or a subject's parent or legal guardian to "review the [BWC] recording in accordance with the provisions of [OPRA]." N.J.S.A. 40A:14-118.5(k). Had the Legislature intended to preclude the application of OPRA's confidentiality exemption or the judicially recognized confidentiality exemption, it would have provided for such an exclusion. See Est. of Burns, 468 N.J. Super. at 319 (quoting Brewer, 53 N.J. at 174). We also observe the Legislature did not amend OPRA to limit its application to the BWCL.

We conclude the exemption applies here because information received by law enforcement regarding "a person who has not been arrested or charged" is confidential and not subject to disclosure. Bergen Cnty. Prosecutor's Off., 447 N.J. Super. at 204. Defendants met their burden of establishing the exemption

---

[3] An ongoing investigations exemption under OPRA, N.J.S.A. 47:1A-3(a), provides that "records which are sought to be inspected, copied, or examined [that] pertain to an investigation in progress" are exempt.

applied because of the potential harm to the uncharged third party if the BWC footage were released.

We note that Fuster seeks release of his own statement, which he undoubtedly recollects. Conversely, the accused has not had an opportunity to object or challenge the recorded allegations in court. The accused here, as in many uncharged investigations, may not know the video exists. Fuster can waive his privacy interest and consent to disclosure; the accused does not have the same opportunity. Under OPRA, the Department has the "responsibility and an obligation to safeguard from public access" the BWC video which contains confidential information "with which it has been entrusted [as] disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1.

We recognize plaintiffs' compelling argument that they are highly concerned parents "advocating for their child" as they believe Fuster's video statement of alleged sexual misconduct against their son demonstrates the Department wrongfully declined to prosecute. However, these reasons do not negate the well-established confidentiality exemption protecting an uncharged person's law enforcement records from disclosure. A review of the BWCL's plain meaning provides no reason to depart from this bedrock principle.

Although we conclude the confidentiality exemption is appropriate here, we briefly address plaintiffs' argument that the "AG Directive 2022-1," Off. of the Att'y Gen., L. Enf't Directive No. 2022-1, Update to Body Worn Camera Policy 1 (Jan. 19, 2022), does not control the disclosure of the video recording. Cf. In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6, 246 N.J. 462, 487-88 (2021) (explaining that Attorney General directives "relating to the administration of law enforcement have the 'force of law'" for police entities (quoting N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 565 (2017))). The BWCL provides that a "[BWC] shall be activated . . . in accordance with applicable guidelines or directives promulgated by the Attorney General." N.J.S.A. 40A:14-118.5(c)(1). Further, "The Attorney General is authorized to promulgate or revise guidelines or directives, as appropriate, to implement and enforce the provisions of [the BWCL]." N.J.S.A. 40A:14-118.4. The BWCL does not provide the Attorney General the authority to modify its video disclosure requirements; rather, it states the Attorney General may promulgate "applicable guidelines or directives" to effectuate the statutory provisions. See N.J.S.A. 40A:14-118.5(c)(1); State v. Jones, 475 N.J. Super. 520, 532 n.1 (App. Div. 2023). Because the legislative intent is clear, we need not address this argument further.

In summary, the plain language of the BWCL's exemption provision does not abrogate the application of OPRA, but rather supplements OPRA's exemptions. Here, the OPRA exemption, N.J.S.A. 47:1A-9(b), which excludes from disclosure a public record deemed privileged or confidential pursuant to established judicial case law, precludes release of the BWC video recording of Fuster's accusations against an uncharged relative.

B.

Common Law

A common law right of access to public records exists independently of OPRA. See Gannett Satellite Info. Network, LLC v. Township of Neptune, 254 N.J. 242, 256 (2023); see also N.J.S.A. 47:1A-8 (stating that "[n]othing" in OPRA "shall be construed as limiting the common law right of access to a government record"). At common law, a citizen has "an enforceable right to require custodians of public records to make them available for reasonable inspection and examination." ACLU, 474 N.J. Super. at 268 (quoting Irval Realty Inc. v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372 (1972)). "Indeed, historically, '[t]he common law makes a much broader class of documents available than [OPRA], but on a qualified basis.'" O'Shea v. Township of W. Milford, 410 N.J. Super. 371, 386 (App. Div. 2009) (alterations in original) (quoting Daily Journal, 351 N.J. Super. at 122). However, "[t]o obtain records

under 'this broader class of materials, [a] requestor must make a greater showing than OPRA requires.'" Rivera, 250 N.J. at 144 (second alteration in original) (quoting Lyndhurst, 229 N.J. at 578).

"[T]he common[]law right of access . . . is not absolute." Keddie v. Rutgers, 148 N.J. 36, 50 (1997). The threshold question under the common law right to access is whether the requested records are "public records." See O'Shea, 410 N.J. Super. at 386-87. Under common law, to constitute a public record, three elements must be met: (1) the document "be a written memorial"; (2) the document "be made by a public officer"; and (3) "the officer be authorized by law to make it." Bergen Cnty. Imp. Auth. v. N. Jersey Media Grp., Inc., 370 N.J. Super. 504, 518 (App. Div. 2004) (quoting Nero v. Hyland, 76 N.J. 213, 221-22 (1978)). Our Supreme Court has recognized if an exemption exists under OPRA to a request for a videotape, it may be "better analyzed under the common law right of access where the asserted need for access can be weighed against the needs of governmental confidentiality." See Gilleran, 227 N.J. at 176-77.

Once the requested information is established as a public record: "(1) the person seeking access must establish an interest in the subject matter of the material; and (2) the [person's] right to access must be balanced against the State's interest in preventing disclosure." Rivera, 250 N.J. at 144 (alteration in

original) (quoting <u>Lyndhurst</u>, 229 N.J. at 578) (internal quotation marks omitted).  Our Supreme Court has determined that "the trial court [is] 'the best forum to elicit facts about the parties' interests under the common law and to balance those interests.'"  <u>Gannett Satellite Info. Network, LLC</u>, 254 N.J. at 258 (quoting <u>Rivera</u>, 250 N.J. at 146).

Here, the requested video is undisputedly a public record.  Plaintiffs have demonstrated a recognized interest in the disclosure of the video under the BWCL.  We are unpersuaded by defendants' argument that plaintiffs have no personal interest in the video.  Fuster was a "[s]ubject of the video footage" under N.J.S.A. 40A:14-118.5(a) as a "conversant . . . or other similarly situated person who appears on the [BWC] recording."

The point of contention here is whether plaintiffs' right to access the video compels disclosure when balanced against the interests in non-disclosure.  In determining whether the balancing of interests mandates disclosure of a public document under the common law, it is necessary to review the factors identified by the Supreme Court in <u>Loigman</u>, 102 N.J. at 113.  The factors to consider are:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure;

A-1673-22

(4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[Ibid.]

In balancing the factors, plaintiffs argue the common law right of access requires disclosure because: under factor one, citizens "would not [be] discourage[d] . . . from providing information"; under factor two, Fuster "gave the statement," so no harm would occur; and under factor three, "decision-making w[ould] not be chilled by disclosure" and no confidentiality policy reasons precluded disclosure of the accusations known to plaintiffs. Defendants argue under factor one that investigations would be negatively impacted. Defendants argue if statements regarding alleged familial sexual abuse against a special needs minor were made public, then the investigative decisions "might be postponed or referred to the Division of Child Protection and Permanency . . . where such documents [we]re . . . exempt." Under factor two, defendants argue that "good Samaritans [would] second guess getting involved," if their BWC recorded statements were readily released, detrimentally affecting investigations. Lastly, defendants argue the custodian was correctly "protecting

the privacy rights of an accused where no probable cause was found . . . and that of a special needs" minor.

When balancing the interests in disclosure of plaintiffs and the public against law enforcement and the uncharged party, we conclude the balance of factors weighs toward non-disclosure of the video footage. Release of BWC video investigation information of an uncharged individual will impede law enforcement's investigative function because witnesses may choose not to come forward. Also, as we have addressed, under the BWCL, an uncharged party has no opportunity to be informed of the potential disclosure by law enforcement and thus has no ability to object and be heard. Law enforcement efforts should not be stinted by the potential release of BWC recorded information regarding an uncharged party. We concur with the judge's finding that while plaintiffs here would remain cooperative, there exists a "risk of discouraging [others from] reporting . . . crimes when a third party is able to obtain BWC footage of the reporting party's police interview." In weighing the compelling interests under the common law, the interests militate against disclosure.

Again, we recognize plaintiffs have a strong personal interest in disclosure and accept their desire to advocate for their son. However, mandating disclosure of a witness's recorded statement of an alleged crime against an uncharged individual presents a substantial risk of "imped[ing] agency functions by

discouraging citizens from providing information to the government." See Loigman, 102 N.J. at 113.

We note, unlike the compelling public interest in Rivera, 250 N.J. at 149-50, which involved disclosure of redacted documents after an investigation "substantiated" claims of "[r]acist and sexist conduct by the civilian head of a police department [that] violate[d] the public's trust in law enforcement," here there was insufficient probable cause to file charges. The interest of the accused cannot be ignored as we have determined "confidentiality protects the privacy interest of the individual who . . . would face irremediable public condemnation" from disclosure of uncharged accusations. Bergen Cnty. Prosecutor's Off., 447 N.J. Super. at 204. Based on the specific facts presented in the record, the interest in disclosure is outweighed by the government's and individual's interest in confidentiality; therefore, plaintiffs are not entitled to disclosure of the BWC video pursuant to the common law right of access.

We have considered the parties' remaining arguments and conclude they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1673-22

23