## FIDELITY TRUST COMPANY v. THE CLERK OF THE SUPREME COURT.

Submitted June 30, 1900—Decided November 12, 1900.

Prior to the year 1897 the clerk of the Supreme Court received to his own use all of the fees derived from the furnishings of searches for judgments in his office. In that year (*Pamph. L.* 1896, *p.* 50) the clerk was placed upon a salary in lieu of all fees and the gross income of the office was turned into the state treasury. At this period there was and there still is in use in this office a system of indexing judgments called the "patent or short form," which differs from the older method of appending a separate index to each book of records, although this older method is still kept up. The "patent indices" enable a search to be more quickly made. The cost of keeping up both of these forms of indices has since 1897 been paid out of the state treasury. In January, 1900, a demand was made upon the clerk of the Supreme Court by the attorney of a company lawfully engaged in the business of guaranteeing titles to real estate for permission to examine these "patent indices." Upon the refusal of the clerk to permit the company to make the examination this application was made for a *mandamus* to compel the clerk to permit the examination of the said indices by the relator. *Held,* that no clear legal right of the relator has been violated.

On rule to show cause why a *mandamus* should not issue.

This matter was heard upon the following agreed state of facts:

It is stipulated and agreed by and between the attorneys of the respective parties in the above-stated action that said cause be disposed of upon the following agreed state of facts:

*First.* Fidelity Trust Company is a corporation of the State of New Jersey, having authority by law and engaged in the business *inter alia* of examining and guaranteeing titles to realty in the State of New Jersey.

*Second.* That in the prosecution of said business it is the practice for Fidelity Trust Company, in the examination of any particular title, to procure from the office of the clerk of the Supreme Court searches for judgments remaining of record against parties so connected with the title being examined as to make said judgments a lien thereon.

*Third.* That the judgments in the Supreme Court which have have been recovered within the past twenty years are recorded in a large number of books remaining on file in the office of the clerk of the Supreme Court.

*Fourth.* That each of said books has an index in the front of the same, in which the judgments recorded in said book are indexed under the first letter of the name of the person against whom the judgment was recovered. Said indices are voluminous, but are kept up so far as the judgments are actually recorded, and besides these there are auxiliary indices carrying down to date all judgments entered, whether actually recorded or not.

*Fifth.* In addition to said indices, there is also what is known as a patent or short form of indices, from an inspection of which it is practicable to make a search against any given name more quickly. Said short form indices were started many years ago, under the direction of Benjamin F. Lee, late clerk of the Supreme Court, and were paid for by him, and have been maintained down to the present time, and are at present kept up by the employes in the office of the clerk of the Supreme Court, who, since said office has been placed on a salary basis, are paid by the state. That said office as now administered brings a substantial profit over and above

its operating expenses and revenue to the state. That a large portion of said revenue comes from searches ordered by lawyers and by title companies throughout the state, of which Fidelity Trust Company is one. That at the present time, upon request, individual members of the bar are allowed to examine said indices, but title companies engaged in the business of assuring titles as aforesaid are not allowed to examine said indices. That should the revenue arising from searches made for title companies be taken away, because of allowing said title companies to make their own searches, the profit arising to the state from the administration of the office of the clerk of the Supreme Court would be considerably lessened.

Before Justices DIXON, GARRISON and COLLINS.

For the relator, *Thomas N. McCarter, Jr.*

For the defendant, *Samuel H. Grey,* attorney-general.

The opinion of the court was delivered by

GARRISON, J. The question to be determined upon this application is whether the clerk of the Supreme Court should be commanded to permit the Fidelity Trust Company to examine the "patent or short form of indices" described in the fifth section of the "agreed state of facts." And this, in turn, depends upon whether the relator has a clear legal right to the inspection demanded in its behalf. The leading case in this state upon this general subject is *Lum* v. *McCarty,* 10 *Vroom* 287. In that case the Court of Errors held that county clerks are not entitled to demand fees for searches of the records in their offices made by an attorney for his client. The *ratio decidendi* of this case as to the records of conveyances and mortgages was that the right of public access to them was conferred by pertinent statutes, and that as to the records of judgments, they likewise were free to the public, because they were "public records and were public property, kept in a public place, at the public expense, for

the public benefit." With respect to indices of judgments, the opinion said that "for the convenience of the public in examining these (judgments) the law provides for the making of proper indexes of their contents." *Nix. Dig., tit. "Practice Act,"* § 77. This statutory regulation is that county clerks shall enter complete records of judgments "in a separate book to be kept for that purpose, with a complete alphabetical index to the same." Lum *v.* McCarty is, therefore, an authority for the rule that a member of the general public may, without payment of a fee, search for judgment records in the public office in which they are by law required to be entered, and to that end have a right of access to the books required to be kept for that purpose, with an alphabetical index to the same. This decision is, by the facts of the case, limited to the indices of the separate books in which judgments were directed to be entered, and by the reasoning of the case it is confined to the indices that the clerk is by law required to keep. It is not, therefore, an authority with respect to the patent indices with which we are concerned, which are of a different character and are not required by any law to be kept. It is not an authority for the broad doctrine contended for, that whatever the public pays for it may lawfully demand the right to use. There is a sense, however, in which this doctrine is illustrated in the present case, although not in the manner for which contention is made.

By the act of March 5th, 1896 (*Pamph. L., p. 50*), the clerk of the Supreme Court was placed upon a salary and the gross receipts of the office were turned into the state treasury. The effect of this legislation was that thenceforward the clerk must serve two publics—one the comparatively small public composed of those who make a personal use of the office; the other, the larger public, comprising all the citizens of the state, into whose treasury the earnings of the office go. This double trust furnishes, I think, the key to the situation before us. For back of each of these trusts there is a legislative policy—one respecting the use of the office, the other respecting its earnings. The two are mutually exclusive, but are not necessarily conflicting. Upon the one hand, it is plainly

the legislative policy that certain things are to be furnished by the state free of charge; on the other, it is clearly the legislative policy that the office shall produce an income to the state. In a given case the question is that of ascertaining which of these is the legislative will.

In the present case there are several considerations that lead me to the conclusion that the intended beneficiary of the legislature in maintaining at public cost these "patent indices" is the citizen public that is interested in the state treasury, rather than the smaller public that makes actual use of the office.

In the first place, these "patent indices" are not required by law to be kept, and the separate indices that are so required are kept and are open to the relator as one of the public.

Second, these patent indices are not required to be kept at all. They might at any moment be discontinued without violence to the clerk's official bond or to the written or unwritten law of his office.

Third, in Lum *v.* McCarty the indices declared to be public were those that were required by law to be kept, and in the case of *Barber* v. *Title Co.,* 8 *Dick. Ch. Rep.* 158, it was said, in the opinion of the Court of Errors and Appeals, that "the case of Lum *v.* McCarty carries the right of the public to its extreme limit."

Fourth, under the fee system, these patent indices were used solely for the emolument of the clerk. The change by which that official was placed upon a salary and the gross receipts of his office declared to be "for the sole use of the State of New Jersey" (*Pamph. L.* 1896, *p.* 50) did not enlarge the right of special access of the public to the contents of the office; it simply placed the state in the clerk's stead with respect to the earnings. What before was accessible remained accessible, and what before was inaccessible remained so. In view of this legislative programme, the fact that these indices are kept up at public expense is entirely consistent with their inaccessibility to the public—it is the opposite course that would be inconsistent with this policy of the law.

As the result of these considerations, my conclusion is that (to put it no stronger than is necessary) the relator has not that "clear legal right" to inspect the indices in question which is essential to the exercise of the discretion appealed to by this application. The rule to show cause should be discharged.