Susan B. LONG and Philip H. Long, Plaintiffs,

v.

UNITED STATES INTERNAL REVENUE SERVICE, Defendant.

Susan B. LONG and Philip H. Long, Plaintiffs,

v.

BUREAU OF ECONOMIC ANALYSIS, U.S. DEPARTMENT OF COMMERCE, Defendant.

Nos. C75–228C, C78–176C.

United States District Court, W.D. Washington.

June 30, 1983.

**800**

Stephen K. Strong, David F. Stobaugh, Bendich, Stobaugh & Strong, Seattle, Wash., Kenneth H. Davidson, Davidson, Czeisler & Kilpatric, Kirkland, Wash., for plaintiffs.

Sarah Hunt, Donald J. Gavin, Patricia Scott-Clayton, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., Gene S. Anderson, U.S. Atty., Charles Pinnell, Asst. U.S. Atty., Seattle, Wash., for defendants.

## MEMORANDUM OPINION

COUGHENOUR, District Judge.

In 1975 plaintiffs filed Civil Action No. C75–228C against the United States Internal Revenue Service ("IRS") and, in 1978, filed Civil Action No. C78–176C against the Bureau of Economic Analysis ("BEA"). The two actions were later consolidated. What appeared to be routine Freedom of Information Act ("FOIA") cases thereafter followed a torturous trail of voluminous pleadings (sixteen volumes), motions, hearings, appeals, remands and, finally, trial on June 14 to 22, 1983.

Plaintiffs, Philip H. and Susan B. Long, have had a history of over a decade of FOIA litigation with the Internal Revenue Service. During this period plaintiff Susan B. Long estimates she has filed 216 FOIA requests with the IRS and thirteen FOIA lawsuits against the IRS and BEA. On one day in May, 1979, plaintiffs filed thirty-three FOIA requests with the IRS. Plaintiffs' FOIA requests and lawsuits are the result of an intense interest in IRS documents which apparently developed after plaintiffs were the subject of an IRS audit.

In *Long v. IRS*, plaintiffs sought (a) reports and analyses; (b) statistical tabulations; (c) statistical design records; and (d) "microdata" from the Individual Returns Filed Phase (Phase III), Corporate Returns Filed Phase (Phase IV), and Delinquent Returns Phase (Phase II) of the Taxpayer

Compliance Measurement Program ("TCMP"). In *Long v. BEA* plaintiffs sought computer tapes containing microdata from TCMP Phase III, Cycles 1–5, from which taxpayer identifications had been deleted.

The IRS has voluntarily produced the documents described in paragraphs (a)–(c) above. Many of the disputes regarding paragraph (d) and the documents sought in *Long v. BEA* have been resolved upon summary judgment or by voluntary agreement of the IRS. The issues which remain for determination are:

1. Whether the Court should enter a permanent injunction requiring, among other things, that the IRS produce "similar" documents in the future.

2. Whether the Court should make a finding that IRS employees have acted in an arbitrary and capricious manner.

3. Sufficiency of IRS production, including adequacy of the IRS search for responsive materials; ZIP Code deletion; and problems with computer tapes and documentation.

4. Whether the IRS should waive fees for copying of certain documents and tapes (this issue now involves approximately $1,000).

5. Attorneys' fees.

### SHOULD AN INJUNCTION ISSUE?

Plaintiffs contend that the IRS should be permanently ordered to permit inspection and copying by plaintiffs of the statistical tabulations made available in this case and that the IRS should be permanently enjoined from withholding reports and analyses, statistical tabulations and statistical design records from future cycles of TCMP Phases III and IV.

Plaintiffs contend that at an earlier hearing in this case defendants stipulated to the entry of a permanent injunction. Defendant disputes this contention. The Court has carefully reviewed the transcript of those proceedings (Plaintiffs' Exhibit 21), and has considered the testimony regarding the alleged stipulation and cannot conclude that defendant stipulated to entry of a permanent injunction. Rather, the transcript merely contains statements by an employee of defendant that the IRS will cooperate with plaintiffs regarding further production of documents, and that some vaguely referenced agreement had been entered into. There was no showing of what that agreement was.

It is necessary, therefore, for the Court to determine whether plaintiffs' request for injunctive relief should be granted. A similar issue arose in *Long v. IRS,* 693 F.2d 907 (9th Cir.1982), a case which also involved TCMP data. The trial court had declined to enter an injunction because "(1) an injunction against withholding similar documents in the future would be too vague, and would create more conflict than it would resolve; (2) a prospective order would improperly circumvent the agency and bypass the agency's right to claim exemptions as applicable to specific documents; and (3) the Economic Recovery Act of 1981 (ERTA) affected the duty of the IRS to disclose this type of information." 693 F.2d at 907.

On appeal, the Ninth Circuit held the district court had failed to consider the standards set forth in *GSA v. Benson,* 415 F.2d 878, 880 (9th Cir.1969), and *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). The circuit reversed and remanded to the district court "to weigh all the relevant factors and require compliance within a reasonable time . . . ."

It is, therefore, incumbent upon the Court to apply the standards of *Benson* and *Grant* to the facts of this case. Those standards were described by the Supreme Court as follows:

"[T]he moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be

considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." 345 U.S. at 633, 73 S.Ct. at 898.

■ The Court has carefully considered these standards as they apply to the facts of this case. Plaintiffs contend that defendant has displayed a pattern of repeated refusal to disclose exempt documents and a likelihood of continuing in this conduct. The Court disagrees. In fact, defendant has repeatedly disclosed exempt documents to plaintiffs voluntarily, and has refused disclosure in certain instances where a bona fide controversy existed regarding the exempt status of the documents. In many respects defendant's position on non-exempt status has been upheld by the Court. In those instances where disclosure was ordered, there is no reason to believe defendant would refuse to comply with the law in the future. The Court was persuaded by the testimony of defendant's witnesses that their expressed intent to comply with FOIA is bona fide and made in good faith. They testified that they will produce the same type of records in the future that have been voluntarily produced in this case or that have been ordered to be produced. Regarding the "character of past violations," it must be noted that many of the documents involved in this case are highly sensitive. Some contain data from individual taxpayers' returns. Most were used in an effort to determine how best to achieve taxpayer compliance with the Internal Revenue laws. Still others were used to create formulas for the selection of taxpayer returns for audit. That the IRS might have concerns regarding the public disclosure of these documents is understandable. Moreover, those concerns have, in several instances, been found to be valid.

Considering "the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and ... the character of the past violations," an injunction is not warranted in this case.

Lastly, considering the magnitude of the ongoing TCMP program (over 1,300,000 pages of statistical tabulations were produced to plaintiffs), and the diversity and uncertainty of the types of documents to be generated in the future, any injunction would lack the specificity required under Fed.R.Civ.P. 65(d).

## ARBITRARY AND CAPRICIOUS CONDUCT

Plaintiffs urge the Court to make a finding pursuant to 5 U.S.C. § 552(a)(4)(F) that employees of defendants acted in an arbitrary and capricious manner. Such a finding would trigger an investigation to determine whether disciplinary action is warranted against the individual employees. Plaintiffs contend that IRS employees have submitted false or misleading statements to the Court regarding the existence of exempt information, have failed to release disclosable information for extended periods of time, and have erected high copying charges as barriers to access.

■ After carefully considering the testimony at trial and the prior record of proceedings in these cases, the Court declines to make such a finding. While there have been problems and delays in the production of information by defendants, the Court does not agree that these have been the result of "arbitrary and capricious" conduct on the part of defendants' employees. Rather, the Court was persuaded at trial that defendants' employees were confronted with broad-ranging requests for substantial volumes of material, much of which presented serious questions of statutory exemptions. Other delays and problems were the result of the age and sensitivity of the materials sought, and the necessity of making obsolete computer tapes compatible with present-day technology.

## SUFFICIENCY OF PRODUCTION

Plaintiffs contend that defendants' disclosure of information has been deficient in numerous ways. They argue that the IRS performed an inadequate search for responsive materials; that portions of the taxpayer ZIP Codes should have been disclosed;

and that computer tapes and documentation were inadequate and incomplete.

The Court was satisfied by testimony at trial that a thorough search was performed by defendants for responsive materials. Plaintiffs' allegations to the contrary amounted to little more than suspicions and unsubstantiated charges of false testimony. Certainly, the evidence introduced by plaintiffs did not establish that the testimony and representations of the IRS representatives were untrue.

Plaintiffs seek disclosure of the first three digits of the five-digit ZIP Codes contained in certain of the TCMP data. TCMP computer tapes, in their original form, contained taxpayers' Social Security numbers, employer identification numbers, addresses, ZIP Codes and other information contained in tax returns. In the case of a business return, the type of business, date when the business commenced operations, number of employees, types of excise taxes paid, indicators of the size of the business, etc., were contained on the computer tapes.

Pursuant to 26 U.S.C. § 6103 (which precludes disclosure of tax return information in a form which could be associated with a particular taxpayer), the Court ordered that taxpayer identification data be deleted from the tapes. In accordance with this order, defendant removed from computer tapes the taxpayer's Social Security number, employer identification number, and address, including the ZIP Code.

■ Plaintiffs contend that disclosure of the first three digits of the ZIP Code would not create a significant risk that a particular taxpayer's identity could be discerned from data on the tapes. There are approximately 37,000 five-digit ZIP districts in the United States, and about 875 three-digit ZIP districts. A three-digit ZIP district has a population of approximately 250,000 people. Testimony at trial established that disclosure of the first three digits of a taxpayer's ZIP Code, when coupled with other specific information on the taxpayer's return, could easily result in disclosure of sufficient material to identify the individual taxpayer whose tax return data was con-

tained on the computer tapes. For example, disclosure of three digits of the ZIP Code for the Boeing Company, when coupled with other data contained on the computer tapes such as business start date, number of employees, indicators of the size of the business, etc., could readily result in the release of Boeing's tax return data in direct violation of § 6103. The same would likely be true of other taxpayers. Accordingly, the Court finds that it would be inappropriate to compel disclosure of the ZIP Code information sought by plaintiffs.

■ Plaintiffs claim that the computer tapes and documentation were inadequate and incomplete. The evidence at trial established to the Court's satisfaction that these problems were caused by the age of the tapes and documentation, the departure of personnel who might have been able to assist in their interpretation, and changes in computer technology in the intervening period of time. Defendants produced what they had, and were not obliged to recreate data to plaintiffs' satisfaction. Plaintiffs' evidence did not establish that additional tapes or documentation existed, or that defendants failed to fulfill their responsibilities under FOIA.

## FEE WAIVER

In releasing documents at issue in this case, the IRS denied plaintiffs' request for waiver of copying fees. In doing so, the IRS stated: "It is our belief that the release of the information does not benefit the general public. Therefore, we are denying your request for a waiver of fees."

When this denial was made the copying fees being charged were substantial. Subsequently, defendants voluntarily reduced the copying charges to approximately $1,000. Additionally, plaintiffs wish to copy some of the approximately 1,300,000 pages of statistical tabulations previously produced for their inspection and will presumably seek a fee waiver for those copies.

5 U.S.C. § 552(a)(4)(A) provides:

"Documents shall be furnished without charge or at a reduced charge where the

agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the public."

5 U.S.C. § 552(a)(4)(B) provides for a *de novo* review by the district court of agency decisions under FOIA. In *Rizzo v. Tyler,* 438 F.Supp. 895 (S.D.N.Y.1977), the court held that these *de novo* review provisions of § 552 applied to agency decisions with respect to waiver of copying costs.

■ Having considered the testimony of plaintiff Susan Long and others about her research and future plans, the Court is satisfied that there is sufficient public benefit from her efforts to justify waiving the relatively insignificant copying costs at issue in this case. Accordingly, plaintiffs' fee waiver request for the Panel Data and Phase III, Cycle 1 data is granted.

In addition, defendants have agreed to again make available to plaintiffs the 1,300,000 pages of statistical tabulations. Although there is presently no issue before the Court regarding fee waiver for copying of that data, the Court would suggest, for the guidance of the parties, that a fee waiver for copies of a reasonable number of those documents would be appropriate. On the other hand, the public benefit to be derived from an analysis of that data would certainly not justify a fee waiver for copying of the entire set of 1,300,000 documents.

### ATTORNEYS' FEES

Under the terms of the Pretrial Order entered in this case, the parties are to make post-trial submittals on the issue of attorneys' fees. Those submittals will be made within thirty (30) days from the date of this Memorandum Opinion.

■ Considering the documents which were voluntarily produced after commencement of the litigation, and ordered produced, plaintiffs have prevailed on sufficient issues to justify an award of attorneys' fees.

The parties' submittals should be organized in a manner which will facilitate the

type of analysis described in *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). For example, plaintiffs' time records should permit segregation of fees into discrete time periods such as those before and after voluntary and court-ordered production of documents by defendants. In addition, to the extent possible, plaintiffs should segregate hours devoted to discovery related solely to the issue of defendants' proposed copying costs.

After these submissions, the Court will determine the appropriate award of attorneys' fees.