233 N.J. Super. 375 (1989)
558 A.2d 1363
ASBURY PARK PRESS, INC., PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF HEALTH, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1989.
Decided June 1, 1989.
*377 Before Judges PETRELLA, SHEBELL and LANDAU.
Richard M. Eittreim argued the cause for appellant (McCarter & English, attorneys; Richard M. Eittreim, of counsel; B. John Pendleton, Jr., on the brief).
Elizabeth Zuckerman, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr., Attorney General, attorney; Elizabeth Zuckerman, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
*378 The Asbury Park Press, Inc. (Press) appeals from the dismissal of its complaint which sought access to a summary analysis, in the form of a spread sheet, of more extensive primary data utilized by the Commissioner of the State Department of Health (Department) in a September 26, 1988 address before the New Jersey Hospital Rate Setting Commission (HRSC).
In her written report, distributed at a meeting with the HRSC, the Commissioner commented that despite claims by hospitals in the State for "across the board" rate relief, the Department had concluded that it could not find evidence of such a decline for the period 1985-1987 and that in general the "financial status of New Jersey hospitals remains generally healthy." The Commissioner had further noted that although it had been represented that a vast majority of hospitals were in distress, only a few hospitals had submitted specific requests for rate relief.
As part of an investigative review, the Department had examined the State hospitals' audited financial statements. In addition, a retained consultant, operating under a contract with the Department and in conjunction with Department staff, had prepared a computer spread sheet as part of his work in analyzing the data derived from the audited financial statements; official statements issued by the New Jersey Health Care Facilities Financing Authority accompanying bonds issued by it; certificate of need applications filed by various hospitals; and transcripts of meetings of the HRSC on December 23, 1987 and January 20, 1988.
The claim by the Press in this case centers on the Commissioner's statement that the Department discerned from the consultant's computer analysis that some hospitals claiming to be in dire financial straits either had significant cash reserves or had transferred out of their institutions considerable amounts of money to affiliated bodies in each of the past three years, or both. However, the Commissioner also stated that *379 because the Department did not have full and detailed information about transfers out of the hospital system through "related party transactions" the cases alluded to could not be confirmed. Hence, the Commissioner cautioned that before recommendations could be made for rate relief beyond what had already been provided, it was necessary to obtain complete and accurate financial information from each hospital claiming financial need. The Commissioner recommended that the HRSC "entertain only hospital-specific appeals for any additional increases for 1988." Under the law, the HRSC is the final authority in hospital rate setting matters. See N.J.S.A. 26:2H-4.1.
After the Commissioner's presentation a Press reporter requested the names of the hospitals alleged to have been involved in asset transfers, as well as a listing of cash reserves for each such hospital. Subsequently, the reporter also requested that the Department provide it with copies of the audited financial statements submitted to the Department by individual hospitals. The Press was supplied with financial statements for nine of the eighty-nine hospitals requested.[1] However, it was unable to determine the magnitude of the hospitals' transfers to related parties from the information received. Accordingly, the Press asked to be provided with the computerized analysis of the audited financial statements prepared by the Department's consultant. The Department denied the Press access to that document, taking the position that the basic sources of information examined by the consultant in preparing the spread sheet were readily available for inspection. It refused to make available its spread sheet summary *380 analysis of that data. The Press then instituted this suit to obtain the requested information.
In denying the Press access to the spread sheet, Judge Levy agreed with the Department that the factual data utilized by the consultant and the Department staff to prepare the computerized spread sheet were public records which were available for inspection. However, he determined that the internal analysis or work product of the analysis (the spread sheet itself) was not a public record. In granting the Department's motion for summary judgment, Judge Levy stated:
I see no requirement in the statute nor the Common Law dealing with public records to guide any member of the public, including newspaper reporters through the facts which a fact finder reviewed in order to make a decision. The decision can be reported. The facts can be reviewed by Mr. Brown, or if he's not capable of doing it, someone that he can hire that has more expertise than he does, and then he can deal with it as he sees fit and criticize or praise the determination of the Commissioner as he sees fit.
The issue here is whether or not a particular compilation of these facts prepared by the staff of the Department of Health and a consultant retained by the Department is within the bounds of the Right to Know statute or the Common Law with regard to public documents. I've already made lengthy statements on the record at the return of the order to show cause as to my reasons why that is a compilation and is not a document and is not a public record.
It is not required by any law or regulation or anything of which I'm aware to be prepared or maintained by the Commissioner. She had no requirement to retain this consultant. She had no requirement to accept his opinion. He had no requirement to issue his opinion either in writing or orally. He issued it in writing.
The fact that he used a computer to make the calculations and to restructure the data in tabular form to demonstrate his points means nothing, in terms of public records. There is no reason why that work product, that compilation, that information that led to the thought processes of the Commissioner making a statement she made should be revealed unless the Commissioner voluntarily wants to do so.
On this appeal the Press argues that the requested document was made to assist the Commissioner in performing her statutory duties, and thus should be available under the Right-to-Know Law, N.J.S.A. 47:1A-1 et seq. Alternatively, it contends that it is entitled to the document under common law principles.
*381 Our review of the record in light of the arguments in the briefs satisfies us that there is no merit in the Press's arguments. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by Judge Levy in his oral decision of January 6, 1989, with the following comments. We specifically reject Press's argument that any requirement in N.J.S.A. 26:2H-4.1 that the "Commissioner" report to the HRSC so that it can approve a schedule of rates necessarily makes the analysis a public record.[2] The spread sheet was not "required by law to be made, maintained or kept on file." N.J.S.A. 47:1A-2. See Techniscan v. Passaic Valley Water Commission, 113 N.J. 233, 236 (1988); McClain v. College Hospital, 99 N.J. 346, 355 (1985); Nero v. Hyland, 76 N.J. 213, 220-221 (1978); In re Toth, 175 N.J. Super. 254, 259 (App.Div. 1980). Consequently, the information sought is not subject to the Right-to-Know Law.[3]
We turn now to appellant's common law arguments. The definition of a public record under common law is indeed broader than that under the Right-to-Know Law. McClain v. College Hospital, supra (99 N.J. at 354) (quoting Beck v. Bluestein, 194 N.J. Super. 247, 258 (App.Div. 1984)). The term has been defined as:
* * * one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are * * * that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it; * * * [99 N.J. at 354].
*382 Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App.Div. 1954), quoting 76 C.J.S., Records, § 1 at 112. See also Nero v. Hyland, supra (76 N.J. at 221-222); Beck v. Bluestein, supra. In further contrast to the Right-to-Know Law, at common law the citizen must be able to show an interest in the subject matter of the documents sought to be inspected. Irval Realty v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372 (1972). Such interest, however, is not required to be purely personal, and a citizen or taxpayer concerned with a public problem may scrutinize the public record, even though there is little individual interest. Ibid., citing Ferry v. Williams, 41 N.J.L. 332 (Sup.Ct. 1879); Taxpayers Association v. City of Cape May, 2 N.J. Super. 27 (App.Div. 1949); Moore v. Board of Chosen Freeholders of Mercer County, 76 N.J. Super. 396 (App.Div. 1962), mod. 39 N.J. 26 (1962). Nevertheless, some showing of interest, as well as "good faith," is required. Loigman v. Kimmelman, 102 N.J. 98, 104 (1986); Red Bank Register v. Board of Education, 206 N.J. Super. 1, 9 (App.Div. 1985).
In addition to these requirements, prior to allowing a litigant access to alleged confidential information the court must conduct a balancing process "concretely focused upon the relative interests of the parties in relation to these specific materials." McClain v. College Hospital, supra (99 N.J. at 361); D'Elena v. Burlington County Board of Freeholders, 203 N.J. Super. 109, 116-117 (App.Div. 1985). See also United States Department of Justice v. Reporters Committee for Freedom of the Press, ___ U.S. ___, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (construing exemptions under the Freedom of Information Act and balancing public and privacy interests in favor of nondisclosure of compilations of public data). Thus, the judge is required "to balance the public's interest in maintaining the confidentiality in the documents against plaintiffs' interest in examining them." Beck v. Bluestein, supra (194 N.J. Super. at 260). The process should be flexible since depending on the particular circumstances the requirements of confidentiality may be greater in some situations than others. *383 Techniscan v. Passaic Valley Water, supra (113 N.J. at 236); McClain v. College Hospital, supra (99 N.J. at 362). The need to demonstrate a compelling reason for disclosure of the requested documents decreases as the considerations warranting confidentiality become less relevant. Ibid.
Although a computer print-out of the spread sheet may in other contexts be the equivalent of or constitute a written memorial, it was not such here. The Commissioner was not required by law to prepare or keep such a document. She had no duty to prepare or keep it as a memorial or evidence of something written, said or done; it is not a written memorial made by a public officer "authorized to perform that function." It is also not a writing "filed" in a public office. See In re Solid Waste Utility Customer Lists, 205 N.J. Super. 390, 397 (App.Div. 1985), aff'd as mod. on other grounds, 106 N.J. 508, 525 (1987) (customer lists of solid waste utilities not public records merely because they are ordered to be submitted to the Board of Public Utilities); Nero v. Hyland, supra (76 N.J. at 222-227).
Nor was the consultant who prepared the spread sheet a public officer. To the extent that Red Bank Register v. Board of Education, 206 N.J. Super. 1, 8 (App.Div. 1985), seems to imply that a consultant is a public officer, we refer to the language in McClain v. College Hospital, supra (99 N.J. at 363-364), and respectfully disagree with the Red Bank Register opinion in that respect. Indeed, McClain actually reinforced the general rule that opinions of consultants are entitled to a high degree of confidentiality.
Nevertheless, assuming for the purposes of argument that a computer spread sheet of this type of preliminary analysis of incomplete data is a public record under the common law definition of that term, see McClain v. College Hospital, supra (99 N.J. at 354), the document does not thereby automatically become open for public scrutiny. A balancing of the "interest of the public and the industry" in maintaining the confidentiality *384 of the document against plaintiffs' interest in examining it must be undertaken. In re Solid Waste Utility Customer Lists, supra (106 N.J. at 525). See United States Department of Justice v. Reporters Committee for Freedom of the Press, supra.
Although such a balancing test is required under the common law right to know, we recognize that Judge Levy did not specifically discuss the balancing process. However, this was because he did not consider the spread sheet to be a public record. The spread sheet involved here is merely a portion of the analytical process of the consultant's efforts for the Department, and hence, for the Commissioner. It constitutes nothing more than a basis for preliminary and tentative conclusions and opinions of the Commissioner drawn from documents which have been made available to the Press. It is no more a public record than if it had been jotted down by the Commissioner on a note pad as her preliminary calculations from data provided to her. Not every piece of paper prepared by or for a public official thereby becomes a public record, even under the common law. If the Commissioner had thrown prior paper drafts, preliminary calculations, or the spread sheet into the waste basket she would not have been discarding or destroying public documents or records. See N.J.S.A. 47:3-15 et seq.; cf. N.J.S.A. 2C:21-3 and 4.
In denying access to the analysis, Judge Levy in effect performed the equivalent of a balancing function, and we read his decision as accomplishing that when he stated:
Furthermore, the affidavit of Mr. Knowlton, Deputy Commissioner Knowlton, indicates that the analysis that was done is based on admittedly partial data and that further data is yet to come from any particular hospital that seeks rate relief.
As he says in Paragraph 7-D, the analysis presents an incomplete financial picture which cannot be completed unless and until any individual hospitals request rate relief. Only then would the Department have access to the financial statements of subsidiary corporations to which certain hospitals are transferring funds.
This complete analysis could explain the reasons for the transfer of funds which in many instances may be fully appropriate. There is a statement in the *385 final paragraph that the Defendant is seeking to avoid public disclosure of incomplete and potentially misleading information. The Plaintiffs argue that the State has taken the data and denied access to the Board rate relief and if the data was incomplete, wrong or in other respects misleading, the Plaintiff should expect that that would be corrected as part of the regulatory process.
This analysis to my mind is completely wrong, and I believe it's because the Plaintiff does not distinguish between data and analysis. The Plaintiff, as I've said, has or already had access to the data and the Plaintiff's interest therefore in the analysis, the court concludes, is prurient.
We agree with Judge Levy that when the Department made available the basic data it disclosed all that was required. As the judge concluded, not only are the results reflected on the computer spread sheet potentially misleading, but a disclosure of alleged "related party transactions" and cash reserves of hospitals claiming to be in need of rate relief could unfairly damage the reputation of the hospitals by a preliminary and incomplete analysis. Moreover, the Department's continuing investigation into the financial status of New Jersey hospitals could be hindered by such disclosure. Each hospital which submits a rate relief request must be given a fair opportunity to present and defend, if necessary, its financial practices before the Department and the HRSC prior to the airing of specific allegations of improper practice with regard to the management of its finances. Hence, the basic interests of the Department, the public, the HRSC and each hospital in the confidentiality of the preliminary spread sheet analysis outweighs any inconvenience which might be caused by the Press having to examine the raw data which was available to the consultant and the Department staff in formulating the preliminary thinking that "across the board" rate relief for New Jersey hospitals was not required.
A weighing of all the factors favors the Commissioner's decision. The Press is not entitled as of right to the spread sheet information. It is free on its own to review and analyze the underlying data which has been made available.
Affirmed.
NOTES
[1] We need not decide whether such information was subject to disclosure as a public record. See In re Solid Waste Utility Customer Lists, 205 N.J. Super. 390, 397 (App.Div. 1985), aff'd as mod. on other grounds, 106 N.J. 508, 525 (1987). Cf. U.S. Department of Justice v. Reporters Committee for Freedom of the Press, ___ U.S. ___, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (FBI "rap sheets" not available under Freedom of Information Act). The Department has already made that information available in response to the request by the Press.
[2] The Commissioners of Health and of the Department of Insurance are both ex officio voting members of the Commission. Subparagraph b of N.J.S.A. 26:24-4.1 refers to "the Commissioner" without specifying which Commissioner, although presumably it refers to the Commissioner of Health.
[3] Moreover, denial of a right of examination would have been appropriate under N.J.S.A. 47:1A-3 if the document was considered as part of "an investigation in progress" by the Department or the HRSC.