628 A.2d 392

HIGG–A–RELLA, INC., T/A STATE INFORMATION SERVICE, BLAU APPRAISAL COMPANY, AND ROBERT D. BLAU, PLAINTIFFS, v. COUNTY OF ESSEX, ET ALS., DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided March 31, 1993.

Robert D. Blau, for plaintiffs.

Louis P. Rago, for plaintiff, Garden State Multiple Listing Service, Inc.

Michael J. Faul, for defendant, Essex County Community College Board of Trustees.

Julian Gorelli, Deputy Attorney General for defendant, Essex County Board of Taxation.

Norman Schulaner, for defendant, County of Essex.

Michael D. Sullivan, for defendants, Townships of Caldwell and Cedar Grove.

## OPINION

YANOFF, J.S.C. t/a (Retired, on recall).

This matter comes before me on reciprocal summary judgment motions. There is no dispute as to the facts, so summary disposition is appropriate. The facts are as follows:

Plaintiff, Higg–a–Rella, Inc.,[1] t/a State Information Service, is in the business of providing ready access to real estate tax assessment records. Its clients include real estate brokers and attorneys. It sells this information either in printout form or by modem, which is connected to plaintiffs' computer. Plaintiffs have obtained this type of material from other counties for what seems to the court a nominal consideration. Plaintiffs bring this action to compel Essex County and defendant municipalities to provide it with a copy of the one-half inch mainframe computer tape on which is entered the real estate tax assessments of each municipality in Essex County, except Newark. The assessor of each

---

[1] Garden State Multiple Listing Service, Inc. has joined in the action.

municipality is required by *N.J.S.A.* 54:4–35 to "file with the [county board of taxation] his complete assessment list, and a true copy thereof" by January 10 of each year. The Essex County Board of Taxation has contracted with the Essex County College to feed this information into a computer tape. This is used by the municipalities and the County Board.

At oral argument, plaintiffs' attorney agreed, without concession, as to amount, or item, that reasonable compensation should be paid for the computer tape, and that this exceeded the cost of the tape itself.

■ The precise issue therefore is whether plaintiffs may compel delivery of the intellectual property which is crystallized in the tape to itself. It is agreed that plaintiffs are entitled to examine and copy all tax lists maintained by each municipality in the County, as well as the County Tax Board, under the Right to Know Act (*N.J.S.A.* 47:1A–2), and common law regarding public records. This includes the right to have the records photocopied. *Moore v. Bd. of Freeholders of Mercer County*, 39 *N.J.* 26, 186 *A.*2d 676 (1962).

■ The scope of the Right to Know Act ("RKL") *N.J.S.A.* 47:1A–2, recently was examined by the Appellate Division in *Shuttleworth v. City of Camden*, 258 *N.J.Super.* 573, 610 *A.*2d 903 (App.Div.1992), a case in which a newspaper sought access to, and review of, police files and an autopsy report. In that case, Judge Stern, for the court, carefully defined rights under RKL and also the common law, writing:

> A citizen has a common-law right to inspect public documents if they are public records, if the citizen has requisite interest to inspect the records, and if the interest in disclosure outweighs the need for confidentiality. The definition of "public record" in this context is broader than under the RKL; ...
>
> . . . .
>
> These materials include almost every document recorded, generated, or produced by public officials, whether or not required by law to be made, maintained or kept on file[.] *Ibid.* 582–83, 610 *A.*2d 903. *Citations omitted.*

With regard to RKL, he continued:

> If a document is a "public record" access to it is an absolute right unless a specific exception applies. *Techniscan v. Passaic Valley Water*, 113 *N.J.* 233, 236, 549 *A.*2d

1249 (1988); *McClain v. College Hosp.*, 99 *N.J.* 346, 354, 492 *A.*2d 991 (1985). Unlike the right of access under the common law, "any citizen, without any showing of personal or particular interest, has an *unqualified* right to inspect public documents if they are, in fact, the statutorily-defined records" under the RKL. At 579, 610 *A.*2d 903.

. . . .

Here, plaintiffs seek a tangible copy of the computer tape, although the information in it is available. No statute, ordinance or other mandate requires that the tape be made or maintained. It was created solely for the convenience of the municipalities. Clearly, relief cannot be granted under RKL.

The opinion in *Shuttleworth* continues:

The real issue before us, therefore, is only whether the public's interest in disclosure outweighs the government's need for confidentiality. In deciding that issue we must note that:

. . . the citizen's common-law right to gain access to . . . public records requires a *balancing* of interests. *McClain v. College Hosp.*, 99 *N.J.* 346, 492 *A.*2d 991 (1985). "The balancing process must be concretely focused upon the relative interests of the parties in relation to these specific materials." *Id.* at 361, 492 *A.*2d 991. The process should be "flexible and adaptable to different circumstances and sensitive to the fact that the requirements of confidentiality are greater in some situations than in others. *Id.* at 362, 492 *A.*2d 991. *Techniscan v. Passaic Valley Water, supra*, 113 *N.J.* at 236, 549 *A.*2d 1249. *Id.* at 584, 610 *A.*2d 903.

After analysis of the decisions in which the "balancing" required by common law is applied, it becomes apparent that categories have developed in which the public interest in obtaining the sought material is such that, unless strong countervailing considerations develop, disclosure is usually required. There are also categories in which the plaintiffs' interest is personal, rather than public, in which disclosure usually is not required. Plaintiffs fall in the latter class, and I therefore rule in favor of defendants.

In the favored category is the media, such as newspapers and television, because they perform an important component of our political process.[2] *Shuttleworth* is such a case. It held that,

---

[2] Thus, the *Shuttleworth* Court discussed the application of First Amendment cases, at 596, 610 *A.*2d 903. The coroner's autopsy photographs which the newspaper wanted were denied.

applying criteria pertinent to criminal investigations, the newspaper was entitled to some, but not all, of the material sought, and that the trial judge conduct an *in camera* review of the remaining material to determine what was to be furnished the newspaper.

Other cases cited by plaintiffs fall in that category. *Asbury Park Press v. Dept. of Health,* 233 *N.J.Super.* 375, 558 *A.*2d 1363 (App.Div.1989), *cert. den.* 117 *N.J.* 646, 569 *A.*2d 1344 (1989)— Department of Health statistics on spread sheet. *United States v. Mitchell,* 551 *F.*2d 1252 (D.C.Cir.1976); *rev. sub nom Nixon v. Warner Communications, Inc.,* 435 *U.S.* 589, 98 *S.Ct.* 1306, 55 *L.Ed.*2d 570 (1978) television network obtained recordings of conversations between President Nixon and Attorney General Mitchell; *Application of National Broadcasting Company, Inc.,* 635 *F.*2d 945 (2d Cir.1980)—similar application to copy videotapes of "Abscam" trials.

Other cases upon which plaintiffs rely concern even more directly the political process which engenders a right to disclosure, superior to that of plaintiffs in this case. Such a case is *Martin v. Ellisor,* 266 *S.C.* 377, 223 *S.E.*2d 415 (1976), the strongest case for plaintiffs, where there was a successful request by the South Carolina Republican Party for a copy of a tape containing the names and addresses of all registered voters. Obviously, the material was sought for election purposes. It was held that a South Carolina statute required compliance. *Ortiz v. Jaramillo,* 82 *N.M.* 445, 483 *P.*2d 500 (1971) is a similar case in another state. *Nero v. Hyland,* 76 *N.J.* 213, 386 *A.*2d 846 (1978) is a case in which even the political process interest was insufficient.

In *Citizens for Better Ed. v. Board of Education, Camden,* 124 *N.J.Super.* 523, 528, 308 *A.*2d 35 (App.Div.1973), an informal group of citizens and parents who took an active interest in education were granted the right to require a school board to supply "the results of standardized achievement tests on a school-by-school

---

*See, Maressa v. New Jersey Monthly,* 89 *N.J.* 176, 196, 445 *A.*2d 376 (1982), *cert. den.* 459 *U.S.* 907, 103 *S.Ct.* 211, 74 *L.Ed.*2d 169.

and grade-by-grade basis" (at 526, 308 *A.*2d 35). There was no issue as to the form in which the data would be submitted.

*Menge v. City of Manchester,* 113 *N.H.* 533, 311 *A.*2d 116 (1973), cited on plaintiffs' behalf, is a case in which a professor of economics sought tax data on a computer tape. There is a public interest in academic study of this kind.

Even under the Federal Freedom of Information Act, which applies to computer tapes (*Yeager v. Drug Enforcement Administration,* 678 *F.*2d 315 (D.C.Cir.1982), limitations may be imposed by a court by application of balancing tests. *Long v. U.S. Internal Revenue Service,* 596 *F.*2d 362 (9th Cir.1979), *cert. den.* 446 *U.S.* 917, 100 *S.Ct.* 1851, 64 *L.Ed.*2d 271 (1980).[3] *Moore v. Bd. of Freeholders of Mercer County, supra,* upon which plaintiffs rely, also falls in the political category. It was held there that candidates for office had the right to have photocopied county records, probably for election purposes.

In reversal of *U.S. v. Mitchell, supra, sub nom. Nixon v. Warner Communications, Inc., supra,* 435 *U.S.* at 601, 98 *S.Ct.* at 1314, there was emphasis on the balancing of interests required by common law. Justice Powell, for the majority, wrote:

> Considering all the circumstances of this concededly singular case, we hold that the common-law right of access to judicial records does not authorize release of the tapes in question from the custody of the District Court. We next consider whether, as respondents claim, the Constitution impels us to reach a different result. At 608, 98 *S.Ct.* at 1317.

*Kestenbaum v. Michigan State University,* 414 *Mich.* 510, 327 *N.W.*2d 783 (1982), the only case involving an application for tax

---

[3] There is subsequent litigation in this case which does not affect the thesis for which the case is cited.

Connected case, *Long v. Bureau of Economic Analysis,* 646 *F.*2d 1310 (9th Cir.1981), *reversed and remanded,* 454 *U.S.* 934, 102 *S.Ct.* 468, 70 *L.Ed.*2d 242 (1981), *remanded* 671 *F.*2d 1229 (1982), 566 *F.Supp.* 799 (W.D.Wash.1983), *reversed and remanded* 742 *F.*2d 1173 (1984), District Court denied release, cases consolidated, *affirmed in part, reversed in part, and remanded* 825 *F.*2d 225 (1987), *reversed and remanded* 487 *U.S.* 1201, 108 *S.Ct.* 2839, 101 *L.Ed.*2d 878 (1988), *aff'd.* 891 *F.*2d 222 (1989), see also 932 *F.*2d 1309 (1991).

assessment lists on computer tapes, was decided adversely to plaintiff's contention.

I agree with the proposition asserted by plaintiffs that "The definition of a public record under common law is ... broader than that under the "Right-to-Know Law," (233 *N.J.Super.* at 381, 558 *A.*2d 1363), arguing that this requires release of the computer tape itself, citing *Asbury Park Press v. Dept. of Health, supra.* I assume, without deciding, for purposes of this discussion on common-law analysis, that a computer tape may be a public record.

Plaintiffs ignore the fact that in *Asbury Park Press*, a newspaper unsuccessfully sought disclosure of a spread sheet prepared by a consultant to the Department of Health. The court ruled against the newspaper under both RKL and, applying the balancing test, the common law, writing:

> ... Hence, the basic interests of the Department, the public, the HRSC and each hospital in the confidentiality of the preliminary spread sheet analysis outweighs any inconvenience which might be caused by the Press having to examine the raw data which was available to the consultant and the Department staff in formulating the preliminary thinking that "across the board" rate relief for New Jersey hospitals was not required.

> A weighing of all the factors favors the Commissioner's decision. The Press is not entitled as of right to the spread sheet information. It is free on its own to review and analyze the underlying data which has been made available. At 385, 558 *A.*2d 1363.

 I agree with plaintiffs that a citizen, or a third party on his behalf, "does not have to prove a *personal* interest" [emphasis added] to assert the common law doctrine, but a public interest, or an interest which a citizen asserts on behalf of the public, is superior to a private interest. *See, Shuttleworth, supra,* 258 *N.J.Super.* at 583, 610 *A.*2d 903.

*Barber v. West Jersey Title and Guaranty Co.,* 53 *N.J.Eq.* 158, 32 *A.* 222 (E & A 1895) is a case which parallels the important elements of the case at bar because there, as here, the plaintiff wanted to create a business with data gathered at public expense. Plaintiff sought free access to the public records in the Camden County Clerk's Office "for the purpose of inspecting and making

abstracts therefrom[.]" and selling the information. Ruling against him, the Court wrote:

> The case of *Lum v. McCarty*, 10 Vr. 287, is relied upon to support this decree. In that case, Lum was employed to search a specific title, and this court held that he had a right of access to the records in the clerk's office, for that purpose, without the payment of fees to the clerk. But that case is not authority for the contention that anyone may occupy the offices of the county clerk until he has made copies of all the records in the care of the clerk for the purpose of setting up a rival office[.] At 159, 32 *A.* 222.[4]

An important element in *Barber* was that at the time, the County Clerk was not salaried, but paid by the fees he collected. That arrangement was changed by statute in 1896.[5] With regard to that change, *Fidelity Trust Co. v. Clerk of Sup. Court*, 65 *N.J.L.* 495, 47 *A.* 451 (Sup.Ct.1900) has stated that it "did not enlarge the right of special access of the public to the contents of the office; it simply placed the state in the clerk's stead with respect to the earnings. What before was accessible remained accessible, and what before was inaccessible remained so." At 499, 47 *A.* 451.

There is no clear governmental mechanism which controls disposition of this property by public entities. The "Local Public Contracts Law", *N.J.S.A.* 40A:11-1 *et seq.*, controls public purchases in excess of $7,500 during the fiscal year. *N.J.S.A.* 40A:12-13 specifies how a ... "municipality may sell ... real property, capital improvements or personal property, or interests therein." In all circumstances, it is the public entity which decides whether to sell an asset.

■ There is no evidence what, if any, revenues are realized by the county or municipalities in the photocopying of the tax lists. In balancing the interests of the plaintiffs against those of the municipalities, the fact that plaintiffs do have convenient access to the tax rolls (*Guarriello v. Benson*, 90 *N.J.Super.* 233, 217 *A.*2d 22 (Law Div.1966)), and that they want the data in a particular form

---

[4] *See, generally:* "Right of abstractor or insurer of title to inspect or make copies of public records." 80 *A.L.R.* 760 (1932).

[5] For a brief history, see *Harriatt v. Lillo*, 452 *F.Supp.* 421, 423-4 (D.N.J.1978).

for business reasons, weighs heavily against the plaintiffs. Conceivably, the governmental entities could use the tape for profit as plaintiffs expect to do.

Balancing the business interest of plaintiffs against a publicly-owned asset, I conclude that common law in this state does not afford plaintiffs the right to computer copies of the tax lists for the purpose of business profit. The computer tapes represent a tremendous amount of data entry, at taxpayer expense. I see no reason why defendants should not decide whether they wish to sell it, and at what price.

Plaintiffs' motion denied. Defendants' motion granted. An appropriate judgment should be presented pursuant to Rule.